United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BENJAMIN WISE,<br><br>        Plaintiff,<br><br>    v.<br><br>MAXIMUS FEDERAL SERVICES, INC., et al.,<br><br>        Defendants. | Case No. 18-CV-07454-LHK<br><br>**ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>Re: Dkt. No. 55 |

Plaintiff Benjamin Wise brings suit against MVI Administrators Insurance Solutions, Inc., Monterey County Hospitality Association Health and Welfare Plan, United HealthCare Services, Inc., Monterey County Hospitality Association, and United HealthCare Insurance Co. (collectively, "Defendants") with regard to a denial of benefits to which Plaintiff claims he is entitled under his health insurance plan, which is covered by the Employee Retirement Income Security Act ("ERISA"). Before the Court is Defendant MVI Administrators Insurance Solutions, Inc.'s ("MVI" or "Defendant")[1] motion to dismiss. Having considered the submissions of the

---

[1] As MVI is the only Defendant that moves to dismiss here, references to "Defendant" are references to MVI unless otherwise specified.

1
Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITHOUT PREJUDICE

parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss without prejudice.

I. BACKGROUND

A. Factual Background

The Court overviews the structure of Plaintiff's insurance plan, then the facts surrounding Plaintiff's allegations.

1. Plaintiff's Insurance Plan

Plaintiff's employer, Eric Miller Architects, is a participating employer of the group health and welfare plan ("Plan") sponsored by the Monterrey County Hospitality Association. ECF No. 1 ("Compl.") at ¶¶ 34, 36. Plaintiff participates in the Plan through Eric Miller Architects. *Id.* at ¶ 3. Benefits under the Plan are provided by insurance providers who contract with the Monterey County Hospitality Association Health and Welfare Trust ("Trust"). *Id.* at ¶ 35. These benefits under the Plan "are subject to the provisions of the Plan, the Trust Agreement, [the] employer's Adoption Agreement, and the determination of the Plan Administrator or health insurance issuer(s)." *Id.* The Plan Trustees are designated as the Plan Administrator. *Id.* at ¶ 11. However, the Plan Trustees contracted with MVI "to perform many of the Plan Administrator's tasks." *Id.* Moreover, the Summary Plan Description ("SPD"), a document that highlights a Plan participant's "rights and obligations" under the Plan, states that "the use of the term 'Plan Administrator' in this document refers to MVI." ECF No. 55-1, Ex. 1 at 1. Thus, Defendant is the designated Plan Administrator.

The Plan offers health insurance options through United HealthCare Insurance Company ("UHCIC") and United HealthCare Services, Inc. ("UHC"), which set policies and guidelines regarding the coverage of health benefits. *Id.* at ¶ 38. "Defendant UHC handles benefit determinations and internal appeals of any benefit denials by the Plan, UHC or UHCIC." *Id.* at ¶ 39.

2. Facts Surrounding Plaintiff's Allegations

Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITHOUT PREJUDICE

In 2002, Plaintiff was involved in a vehicular accident that rendered Plaintiff's left arm completely paralyzed. *Id.* at ¶ 4. On July 5, 2017, Dr. Ken Hashimoto assessed Plaintiff and discussed a possible referral for a Myomo prosthetic. *Id.* at ¶ 21. The Myomo prosthetic, otherwise known as a MyoPro orthosis, is a myoelectric elbow-wrist-hand orthosis manufactured by Myomo, Inc. that could restore functionality to Plaintiff's left arm to assist Plaintiff with daily living activities such as lifting or feeding himself. *Id.* at ¶¶ 4-5. The MyoPro orthosis works by "sensing a patient's own neurological signals through non-invasive sensors on the arm" to amplify a patient's weak neural signal to help move the limb. *Id.* at ¶ 25. The MyoPro orthosis has been called "power steering for your arm." *Id.* at ¶ 24. Plaintiff claims that he "has tried all available traditional therapies" to restore functionality to his left arm "without success." *Id.* at ¶ 20. Thus, Plaintiff asserts that there is "no other option available [to] restore functionality to his arms other than a myoelectric [elbow-wrist-hand] orthosis." *Id.*

Dr. Hashimoto determined that Plaintiff was a candidate for a MyoPro orthosis, and referred Plaintiff to the Valley Institute of Prosthetics and Orthotics for further evaluation by certified prosthetists and orthotists. *Id.* at ¶¶ 21-22. The Valley Institute of Prosthetics and Orthotics determined that Plaintiff met the criteria to use a myoelectric elbow-wrist-hand orthosis. *Id.* at ¶ 22. On or about September 19, 2017, Dr. Brandon Green prepared a history and physical exam review of Plaintiff and his condition. *Id.* at ¶ 40. Dr. Green opined that a myoelectric orthosis is the "best available technology" in helping provide functionality to Plaintiff's left arm. *Id.* Dr. Green's history and physical exam review formed the basis for Plaintiff's initial request for preauthorization coverage of the MyoPro orthotic made to UHC. *Id.* at ¶ 41.

In correspondence dated October 10, 2017, UHC denied Plaintiff's request for coverage of the MyoPro orthotic. *Id.* at ¶ 42. On November 22, 2017, Dr. Green filed an appeal of UHC's denial of benefits to UHC's Appeals Unit. *Id.* at ¶ 44. On December 11, 2017, UHC denied Plaintiff's appeal. *Id.* at ¶ 48. UHC advised Plaintiff that he had exhausted the internal appeal process, and that Plaintiff had the right to an independent medical review through the California

3

Department of Insurance. *Id.* at ¶ 50. Shortly after the denial of benefits by UHC's Appeals Unit, Plaintiff filed a request for an independent medical review with the California Department of Insurance. *Id.* at ¶ 52. On January 17, 2018, Dr. Hashimoto completed a "Physician Certification Experimental/Investigational Denials required by the California Department of Insurance" to facilitate an independent medical review. *Id.* at ¶ 53. On January 26, 2018, Dr. Green submitted extensive information and documentation in support of Plaintiff's independent medical review application. *Id.* at ¶¶ 54-55. MAXIMUS Federal Services, Inc. ("MAXIMUS") conducted the independent medical review by three physicians "trained in physical medicine and rehabilitation." *Id.* at ¶ 60. Each reviewing physician concluded that "the requested device is not likely to be more beneficial for treatment of the patient's medical condition than any available standard therapy." *Id.*

### B. Procedural History

On December 11, 2018, Plaintiff filed suit against MVI Administrators Insurance Solutions, Inc., Monterey County Hospitality Association Health and Welfare Plan, United HealthCare Services, Inc., Monterey County Hospitality Association, and United HealthCare Insurance Co. ECF No. 1. On April 26, 2019, MVI Administrators Insurance Solutions, Inc. ("Defendant") filed a motion to dismiss. ECF No. 55 ("Mot."). On May 10, 2019, Plaintiff filed an opposition. ECF No. 63 ("Opp."). On May 17, 2019, Defendant filed a reply. ECF No. 77 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Plaintiff brings three causes of action in the instant case: (1) claim for ERISA benefits pursuant to 28 U.S.C. § 1132(a)(1)(B); (2) violation of fiduciary duties of loyalty and due care in violation of ERISA pursuant to 29 U.S.C. § 1132(a)(3); and (3) denial of "full and fair review" of the denial of Plaintiff's claim pursuant to 29 U.S.C. § 1133 and applicable regulations. Compl. at ¶¶ 66-87.

Defendant argues that it is not a fiduciary under ERISA and thus it is "not a proper party to this ERISA action." Mot. at 8. Defendant also argues that the complaint fails to satisfy the pleading standards of *Twombly* and *Iqbal*. *Id.* at 9. The Court addresses whether Defendant is a fiduciary under ERISA, which is dispositive of Plaintiff's causes of action. Thus, the Court does not reach the question of whether the complaint has satisfied the pleading standards of *Twombly* and *Iqbal*.

### A. Whether Defendant is a Fiduciary under ERISA

Defendant argues that it is not a fiduciary under ERISA because it performed only ministerial tasks and did not exercise any discretionary authority to determine claims and benefits. *Id.* at 4-8. Plaintiff argues that because Defendant is explicitly named as Plan Administrator, Defendant is automatically a fiduciary. Opp. at 5-6. Plaintiff also asserts that Defendant had discretionary authority because, for instance, Defendant had the power under the Summary Plan Description ("SPD") to determine whether to terminate coverage for fraud or intentional misrepresentation, and Defendant also handled complaints. *Id.* at 7-8. The Court finds Defendant's arguments more compelling.

"Under ERISA, there are two categories of fiduciaries—named (or statutory) and functional." *Acosta v. Brain*, 910 F.3d 502, 517 (9th Cir. 2018). First, the Court analyzes whether Defendant was a named or statutory fiduciary, and then, whether Defendant was a functional

6

Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITHOUT PREJUDICE

fiduciary.

### 1. Whether Defendant was a Named Fiduciary

A named fiduciary is defined as follows:

> [T]he term 'named fiduciary' means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

29 U.S.C. § 1102(a)(2). However, the Court need not dwell on whether Defendant was a named fiduciary because to be classified as a named fiduciary, an entity must be "designated in the plan instrument as a fiduciary." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019). Defendant was not designated as a fiduciary in the SPD, so Defendant was not a named fiduciary.

Plaintiff's reliance on case law for the proposition that a Plan Administrator is automatically considered a fiduciary is unavailing. Plaintiff cites *United States v. Jackson* for the proposition that "an 'administrator' is an example of a fiduciary." 524 F.3d 532, 545 (4th Cir. 2008), *vacated and remanded by Jackson v. United States*, 555 U.S. 1163 (2008). Not so. The Ninth Circuit does not automatically deem administrators to be fiduciaries. "ERISA does not describe fiduciaries simply as administrators of the plan, or managers or advisers." *Acosta*, 910 F.3d at 517; *see also CSA 401(K) Plan v. Pension Prof'ls, Inc.*, 195 F.3d 1135, 1137 (9th Cir. 1999) ("PPI was to provide its services as a third-party administrator and not as a fiduciary of the Plan."); *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415, 1420 (9th Cir. 1997) (analyzing whether plan administrator was a fiduciary); *Erpelding v. Delaware Charter Guar. & Trust Co.*, 162 Fed. App'x 730, 731 (9th Cir. 2006) ("[W]e examine whether the complaint alleged that [an administrator] exercised discretionary authority as a fiduciary or was performing ordinary functions as a non-fiduciary.")

Plaintiff also cites *In re Luna*, which states that "[o]nce deemed a fiduciary, . . . the fiduciary becomes subject to ERISA's statutory duties." 406 F.3d 1192, 1201 (10th Cir. 2005).

7

Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITHOUT PREJUDICE

But as discussed above, an administrator is not automatically deemed a fiduciary in the Ninth Circuit, thus an administrator is not necessarily subject to ERISA's statutory duties.

In sum, Defendant was not a named fiduciary because Defendant was not so designated in the SPD, the plan instrument. Next, the Court considers whether Defendant was a functional fiduciary.

### 2. Whether Defendant was a Functional Fiduciary

ERISA provides a definition of a "functional" fiduciary:

> [A] person[2] is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (footnote added). In other words, to be a "functional" fiduciary, "the person or entity must have control respecting the management of the plan or its assets, give investment advice for a fee, or have discretionary responsibility in the administration of the plan." *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 722 (9th Cir. 1997). "A person or entity who performs only ministerial services or administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary." *Id.* at 721-22. Also, having "to make a decision in the exercise of a ministerial duty does not rise to the level of discretion required to be an ERISA fiduciary." *Id.* at 722.

"The [United States] Supreme Court has stressed that the central inquiry [into whether a party was an ERISA fiduciary] is whether the party was acting as an ERISA fiduciary 'when taking the action subject to complaint.'" *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 838 (9th Cir. 2018) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Specifically,

---

[2] ERISA's definition of "person" includes a "partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

because "a person is a fiduciary under this provision only 'to the extent' the person engages in the listed conduct, a person may be a fiduciary with respect to some actions but not others." *Depot, Inc.*, 915 F.3d at 654.

Here, the action taken that is subject to complaint is the denial of benefits to Plaintiff under the Plan. However, completely lacking from Plaintiff's complaint is any indication that Defendant acted or participated in any way in the denial of benefits. Specifically, Plaintiff's "initial request for preauthorization coverage of the MyoPro [was] made to UHC." Compl. at ¶ 41. After UHC "denied [Plaintiff's] request for coverage," Plaintiff's physician Dr. Green "submitted an appeal to UHC's Appeals Unit" and sought to "rebut the various rationale [sic] used by UHC to deny preauthorization." *Id.* at ¶ 44. However, "UHC denied Plaintiff's appeal." *Id.* at ¶ 48. At that point, "UHC advised that [Plaintiff] had exhausted the internal appeal process." *Id.* at ¶ 50. Thus, Plaintiff next "filed a request for an Independent Medical Review . . . with the California Department of Insurance." *Id.* at ¶ 52. The Independent Medical Review "was conducted through [Defendant] MAXIMUS by three physicians," all of whom concluded that "the requested device is not likely to be more beneficial for treatment of the patient's medical condition than any available standard therapy." *Id.* at ¶ 60.

Thus, from Plaintiff's own allegations, it is clear that it was UHC that denied Plaintiff's initial request for preauthorization coverage and the subsequent appeal. Moreover, it was Defendant MAXIMUS that conducted the Independent Medical Review. The complaint's complete silence as to any role Defendant might have played in the denial of benefits to Plaintiff is thoroughly conspicuous and quite revealing. As the United States Supreme Court and the Ninth Circuit have made clear, the "central inquiry" in resolving whether a party was an ERISA fiduciary is "whether the party was acting as an ERISA fiduciary '*when taking the action subject to complaint*.'" *Santomenno*, 883 F.3d at 838 (quoting *Pegram*, 530 U.S. at 226) (emphasis added). Defendant simply could not have been acting as a fiduciary "when taking the action subject to complaint" because according to Plaintiff's own pleading, Defendant played absolutely

9
Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITHOUT PREJUDICE

no role in denying Plaintiff any benefits. Indeed, Plaintiff even admits that "UHC handles benefit determinations and internal appeals of any benefit denials by the Plan, UHC or UHCIC." Compl. at ¶ 39. Simply put, Defendant took no action. The law is clear that "entities that took no action at all with respect to a plan" are not fiduciaries and thus have no fiduciary responsibilities. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 300 (3d Cir. 2014); *see also Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 914 (7th Cir. 2013) ("AUL's decision *not* to exercise its contractual right to substitute different (less expensive) funds for the Leimkuehler Plan does not make it a fiduciary."); *Trs. Of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008) (holding that an "act of omission" cannot render an entity a functional fiduciary).

Plaintiff argues that Defendant is "the only fiduciary" that can "determine coverage for claims." Opp. at 11. Plaintiff's argument is founded in the Summary Plan Description's ("SPD") statement that "[i]nsurance carriers shall have full discretionary authority to decide all claims and appeals for benefits under the Plan." ECF No. 55-1, Ex. 1 at 4. Under California law, the above excerpt from the SPD constitutes a discretionary clause, a "provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage." Cal. Ins. Code § 10110.6(a). However, under California law, such discretionary clauses are "void and unenforceable." *Id.*

Plaintiff argues that because the SPD's statement that insurance carriers have discretionary authority to review claims is void under California law, it falls to the Plan Administrator (i.e., Defendant) to review claims because the SPD also provides that Plan benefits are "subject to the provisions of the Plan, the Trust Agreement, your employer's Adoption Agreement, *and the determination of the Plan Administrator* or health insurance issuer(s)." ECF No. 55-1, Ex. 1 at 1 (emphasis added). However, Plaintiff's argument is unpersuasive and misrepresents what is meant by "the determination of the Plan Administrator." The SPD explains that the Plan Administrator may make a "determination" as to a "*claim for eligibility* under the Plan . . . pursuant to the Plan

10

and the Trust Agreement." *Id.* at 5 (emphasis added).[3] The SPD never states that the Plan Administrator may make "determinations" as to claims for benefits. In fact, another portion of the SPD which is not part of the discretionary clause states: "The benefits provided under the Plan are insured and underwritten by insurance carriers. The insurance carriers are also responsible for performing various administrative services in connection with the Plan, *including determination and payment of claims*." *Id.* at 3 (emphasis added).

### 3. Summary

In sum, the Court has determined that Defendant is neither a named fiduciary nor a functional fiduciary.

Therefore, the Court GRANTS Defendant's motion to dismiss Plaintiff's first cause of action: a claim for ERISA benefits pursuant to 28 U.S.C. § 1132(a)(1)(B). Courts have held that if a party "had no authority to resolve benefit claims or any responsibility to pay them, [the party] is not the proper defendant for an action to recover benefits as authorized by § 1132(a)(1)(B)." *Echague v. Metropolitan Life Ins. Co.*, 43 F. Supp. 3d 994, 1007 (N.D. Cal. 2014). Here, Defendant was not a fiduciary, played no role in deciding the claim and subsequent appeals, and had no responsibility to pay benefit claims. Thus, Plaintiff's first cause of action fails as to Defendant.

In addition, the Court GRANTS Defendant's motion to dismiss Plaintiff's second cause of action: violation of fiduciary duties of loyalty and due care in violation of ERISA pursuant to 29 U.S.C. § 1132(a)(3). "To establish an action [under] . . . 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity . . . ." *Mathews v. Chevron Corp.*, 362

---

[3] The Court notes that simply because the Plan Administrator may determine a claim for eligibility, that does not mean the Defendant is a functional fiduciary. Under Ninth Circuit law, an entity that performs services or functions "within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary." *Arizona State Carpenters*, 125 F.3d at 721-22. The SPD specifies that the Plan Administrator may only determine a claim for eligibility within the framework of and "under and pursuant to the Plan and the Trust Agreement." ECF No. 55-1, Ex. 1 at 5. Moreover, there is no evidence that Defendant played any role in establishing the "framework of policies, rules, and procedures" used to determine a claim for eligibility. *Arizona State Carpenters*, 125 F.3d at 721-22.

F.3d 1172, 1178 (9th Cir. 2004). Here, the Court determined that Defendant was not a fiduciary acting in a fiduciary capacity. Thus, Plaintiff's second cause of action fails as to Defendant.

Moreover, the Court GRANTS Defendant's motion to dismiss Plaintiff's third cause of action: denial of "full and fair review" of the denial of Plaintiff's claim pursuant to 29 U.S.C. § 1133. Under ERISA, "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review *by the appropriate named fiduciary* of the decision denying the claim." 29 U.S.C. § 1133(2) (emphasis added). Here, Defendant was not the "appropriate named fiduciary" that denied Plaintiff's claim because Defendant was not even a fiduciary. Thus, Plaintiff's third cause of action fails as to Defendant.

Because granting Plaintiff an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendant, and Plaintiff has not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss with leave to amend as to all three causes of action.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within 30 days. Failure to file an amended complaint within 30 days or failure to cure the deficiencies identified in this Order or Defendant's motion and reply will result in dismissal with prejudice of the claims dismissed in this Order. Plaintiff may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: July 2, 2019

*Lucy H. Koh*
LUCY H. KOH
United States District Judge