| | |
|---|---|
| BENJAMIN WISE,<br><br>        Plaintiff,<br><br>    v.<br><br>MAXIMUS FEDERAL SERVICES, INC., et al.,<br><br>        Defendants. | Case No. 18-CV-07454-LHK<br><br>**ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITH PREJUDICE**<br><br>Re: Dkt. No. 128 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Plaintiff Benjamin Wise brings suit against MVI Administrators Insurance Solutions, Inc., Monterey County Hospitality Association Health and Welfare Plan, United HealthCare Services, Inc., Monterey County Hospitality Association, and UnitedHealthCare Insurance Co. (collectively, "Defendants") with regard to a denial of benefits to which Plaintiff claims he is entitled under his health insurance plan, which is covered by the Employee Retirement Income Security Act ("ERISA"). Before the Court is Defendant MVI Administrators Insurance Solutions, Inc.'s ("MVI" or "Defendant")[1] motion to dismiss. Having considered the submissions of the parties,

---

[1] As MVI is the only Defendant that moves to dismiss here, references to "Defendant" are references to MVI unless otherwise specified.

1
Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITH PREJUDICE

the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss with prejudice.

## I. BACKGROUND

### A. Factual Background

The Court overviews the structure of Plaintiff's insurance plan, then the facts surrounding Plaintiff's allegations.

#### 1. Plaintiff's Insurance Plan

Plaintiff's employer, Eric Miller Architects, is a participating employer of the group health and welfare plan ("Plan") sponsored by the Monterey County Hospitality Association. ECF No. 101 ("FAC") at ¶¶ 35, 37. Plaintiff participates in the Plan through Eric Miller Architects. *Id.* at ¶ 3. Benefits under the Plan are provided by insurance providers who contract with the Monterey County Hospitality Association Health and Welfare Trust ("Trust"). *Id.* at ¶ 36. These benefits under the Plan "are subject to the provisions of the Plan, the Trust Agreement, [the] employer's Adoption Agreement, and the determination of the Plan Administrator or health insurance issuer(s)." *Id.* The "Plan Trustees" are designated as the Plan Administrator. *Id.* at ¶ 11. However, the Plan Trustees contracted with MVI "to serve as the Plan Administrator." *Id.* Moreover, the Summary Plan Description ("SPD"), a document that highlights a Plan participant's "rights and obligations" under the Plan, states that "the use of the term 'Plan Administrator' in this document refers to MVI." ECF No. 128-1, Ex. 1 at 1. Thus, Defendant is the designated Plan Administrator.

The Plan offers health insurance options through UnitedHealthCare Insurance Company ("UHCIC") and United HealthCare Services, Inc. ("UHC"), which set policies and guidelines regarding the coverage of health benefits. FAC at ¶ 39. "Defendant UHC handles benefit determinations and internal appeals of any benefit denials by the Plan, UHC or UHCIC." *Id.* at ¶ 40.

#### 2. Facts Surrounding Plaintiff's Allegations

2

Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITH PREJUDICE

In 2002, Plaintiff was involved in a vehicular accident that rendered Plaintiff's left arm completely paralyzed. *Id.* at ¶ 4. On July 5, 2017, Plaintiff was examined by his doctor, Dr. Ken Hashimoto, who assessed Plaintiff and discussed a possible referral for a Myomo prosthetic. *Id.* at ¶ 22. The Myomo prosthetic, otherwise known as a MyoPro orthosis, is a myoelectric elbow-wrist-hand orthosis manufactured by Myomo, Inc. that could restore functionality to Plaintiff's left arm to assist Plaintiff with daily living activities such as lifting or feeding himself. *Id.* at ¶¶ 4–5. The MyoPro orthosis works by "sensing a patient's own neurological signals through non-invasive sensors on the arm" to amplify a patient's weak neural signal to help move the limb. *Id.* at ¶ 26. The MyoPro orthosis has been called "power steering for your arm." *Id.* at ¶ 25. Plaintiff claims that he "has tried all available traditional therapies" to restore functionality to his left arm "without success." *Id.* at ¶ 21. Thus, Plaintiff asserts that there is "no other option available [to] restore functionality to his arms other than a myoelectric [elbow-wrist-hand] orthosis." *Id.*

Dr. Hashimoto determined that Plaintiff was a candidate for a MyoPro orthosis, and referred Plaintiff to the Valley Institute of Prosthetics and Orthotics for further evaluation by certified prosthetists and orthotists. *Id.* at ¶¶ 22–23. The Valley Institute of Prosthetics and Orthotics determined that Plaintiff met the criteria to use a myoelectric elbow-wrist-hand orthosis. *Id.* at ¶ 23.

On or about September 19, 2017, another one of Plaintiff's doctors, Dr. Brandon Green, prepared a history and physical exam review of Plaintiff and his condition. *Id.* at ¶ 41. Dr. Green opined that a myoelectric orthosis is the "best available technology" in helping provide functionality to Plaintiff's left arm. *Id.* Dr. Green's history and physical exam review formed the basis for Plaintiff's initial request for preauthorization coverage of the MyoPro orthotic made to UHC. *Id.* at ¶ 42.

In correspondence dated October 10, 2017, UHC denied Plaintiff's request for coverage of the MyoPro orthotic. *Id.* at ¶ 43. On November 22, 2017, Dr. Green filed an appeal of UHC's denial of benefits to UHC's Appeals Unit. *Id.* at ¶ 46. On December 11, 2017, UHC denied

3

Plaintiff's appeal. *Id.* at ¶ 50. UHC advised Plaintiff that he had exhausted the internal appeal process, and that Plaintiff had the right to an independent medical review through the California Department of Insurance. *Id.* at ¶ 52. Shortly after the denial of benefits by UHC's Appeals Unit, Plaintiff filed a request for an independent medical review with the California Department of Insurance. *Id.* at ¶ 54. On January 17, 2018, Dr. Hashimoto completed a "Physician Certification Experimental/Investigational Denials required by the California Department of Insurance" to facilitate an independent medical review. *Id.* at ¶ 55. On January 26, 2018, Dr. Green submitted extensive information and documentation in support of Plaintiff's independent medical review application. *Id.* at ¶¶ 56–57. MAXIMUS Federal Services, Inc. ("MAXIMUS") conducted the independent medical review, and the review was conducted by three physicians "trained in physical medicine and rehabilitation." *Id.* at ¶ 62. Each reviewing physician concluded that "the requested device is not likely to be more beneficial for treatment of the patient's medical condition than any available standard therapy." *Id.*

### B. Procedural History

On December 11, 2018, Plaintiff filed suit against MVI Administrators Insurance Solutions, Inc., Monterey County Hospitality Association Health and Welfare Plan, United HealthCare Services, Inc. ("UHC"), Monterey County Hospitality Association, and UnitedHealthCare Insurance Co. ("UHCIC"). ECF No. 1.

On April 26, 2019, MVI Administrators Insurance Solutions, Inc. ("MVI" or "Defendant") filed a motion to dismiss the complaint. ECF No. 55. On July 2, 2019, the Court granted Defendant's motion to dismiss the complaint without prejudice. ECF No. 93. In particular, the Court found that Plaintiff had failed to allege that Defendant was either a named or functional fiduciary, and the Court found that all three of Plaintiff's causes of action therefore failed as to Defendant. *Id.* at 11–12. The Court granted Plaintiff leave to amend but warned that "failure to cure the deficiencies identified in this Order . . . will result in dismissal with prejudice." *Id.* at 12.

On August 1, 2019, Plaintiff filed a first amended complaint ("FAC"). ECF No. 101 ("FAC"). Plaintiff's FAC alleges the same three causes of action that Plaintiff's initial complaint alleged. *Id.* at ¶¶ 69–96. On August 30, 2019, Defendant filed a motion to dismiss the FAC. ECF No. 128 ("Mot."). On September 13, 2019, Plaintiff filed an opposition, ECF No. 138 ("Opp'n"), and on September 20, 2019, Defendant filed a reply, ECF No. 140 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

5

curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

Plaintiff's first amended complaint ("FAC") brings the same three causes of action as Plaintiff's initial complaint: (1) claim for ERISA benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) violation of fiduciary duties of loyalty and due care in violation of ERISA pursuant to 29 U.S.C. § 1132(a)(3); and (3) denial of "full and fair review" of the denial of Plaintiff's claim pursuant to 29 U.S.C. § 1133 and applicable regulations. FAC at ¶¶ 69–96.

Defendant argues that it is not a fiduciary under ERISA and thus that Defendant is "not a proper party to this ERISA action." Mot. at 10. Defendant also argues that the complaint fails to satisfy the pleading standards of *Twombly* and *Iqbal*. *Id.* at 10–11.

For the reasons stated below, the Court finds that the same deficiencies that afflicted

6
Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITH PREJUDICE

Plaintiff's initial complaint afflict the FAC. Specifically, the Court concludes that the Plaintiff fails to allege that Defendant is a fiduciary under ERISA, which is dispositive of all three of Plaintiff's causes of action. Thus, the Court need not reach the question of whether the complaint has satisfied the pleading standards of *Twombly* and *Iqbal*.

### A. Defendant Is Not a Fiduciary under ERISA

Defendant argues that it is not a fiduciary under ERISA because it performed only ministerial tasks and did not exercise any discretionary authority to determine claims and benefits. *Id.* at 5–10. Plaintiff argues that because Defendant is explicitly named as Plan Administrator, Defendant is automatically a fiduciary. Opp'n at 6–7. Plaintiff also asserts that Defendant had discretionary authority because, for instance, Defendant had the power under the Summary Plan Description ("SPD") to determine whether to terminate coverage for fraud or intentional misrepresentation, and Defendant also handled complaints. *Id.* at 8–10. The Court finds Defendant's arguments more compelling.

"Under ERISA, there are two categories of fiduciaries—named (or statutory) and functional." *Acosta v. Brain*, 910 F.3d 502, 517 (9th Cir. 2018). First, the Court analyzes whether Defendant was a named or statutory fiduciary, and then, whether Defendant was a functional fiduciary.

#### 1. Defendant Is Not a Named Fiduciary

A named fiduciary is defined as follows:

> [T]he term 'named fiduciary' means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

29 U.S.C. § 1102(a)(2). The Court need not dwell on whether Defendant is a named fiduciary because in order to be classified as a named fiduciary, an entity must be "designated in the plan instrument as a fiduciary." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019) (internal quotation marks omitted). Defendant was not designated as a fiduciary in the SPD,

1  so Defendant is not a named fiduciary.[2]

2  Plaintiff argues that Defendant is a named fiduciary because "[a]n administrator is an example of a fiduciary under ERISA." Opp'n at 6–7 (citing *United States v. Jackson*, 524 F.3d 532, 545 (4th Cir. 2008), *vacated and remanded by Jackson v. United States*, 555 U.S. 1163 (2008)). Thus, Plaintiff appears to assert that a plan administrator is automatically considered a named fiduciary. However, the Ninth Circuit does not in fact automatically deem plan administrators to be fiduciaries. "ERISA does not describe fiduciaries simply as administrators of the plan, or managers or advisers." *Acosta*, 910 F.3d at 517; *see also CSA 401(K) Plan v. Pension Prof'ls, Inc.*, 195 F.3d 1135, 1137 (9th Cir. 1999) ("PPI was to provide its services as a third-party administrator and not as a fiduciary of the Plan."); *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415, 1420 (9th Cir. 1997) (analyzing whether plan administrator was a fiduciary); *Erpelding v. Delaware Charter Guar. & Trust Co.*, 162 F. App'x 730, 731 (9th Cir. 2006) ("[W]e examine whether the complaint alleged that [an administrator] exercised discretionary authority as a fiduciary or was performing ordinary functions as a non-fiduciary.")

Plaintiff also cites *In re Luna*, which stands for the proposition that "[o]nce deemed a fiduciary, . . . the fiduciary becomes subject to ERISA's statutory duties." 406 F.3d 1192, 1201 (10th Cir. 2005). In the instant case, *In re Luna* provides no support to Plaintiff because as discussed above, a plan administrator is not automatically deemed a fiduciary in the Ninth Circuit. Thus, a plan administrator is not necessarily subject to ERISA's statutory duties.

In sum, Defendant is not a named fiduciary because Defendant was not so designated in the SPD, the plan instrument in the instant case. Next, the Court considers whether Defendant was nevertheless a functional fiduciary.

---

[2] The Court may take judicial notice of the SPD in resolving the instant motion because it is incorporated by reference in the FAC. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("Under the 'incorporation by reference' doctrine in this Circuit, 'a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.'" (quoting *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)).

8
Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITH PREJUDICE

### 2. Defendant Is Not a Functional Fiduciary

ERISA provides a definition of a "functional" fiduciary:

> [A] person[3] is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (footnote added). In other words, to be a "functional" fiduciary, "the person or entity must have control respecting the management of the plan or its assets, give investment advice for a fee, or have discretionary responsibility in the administration of the plan." *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 722 (9th Cir. 1997). "A person or entity who performs only ministerial services or administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary." *Id.* at 721-22. Also, having "to make a decision in the exercise of a ministerial duty does not rise to the level of discretion required to be an ERISA fiduciary." *Id.* at 722.

"The [United States] Supreme Court has stressed that the central inquiry [into whether a party was an ERISA fiduciary] is whether the party was acting as an ERISA fiduciary 'when taking the action subject to complaint.'" *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 838 (9th Cir. 2018) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Specifically, because "a person is a fiduciary under this provision only 'to the extent' the person engages in the listed conduct, a person may be a fiduciary with respect to some actions but not others." *Depot, Inc.*, 915 F.3d at 654.

Here, the action taken that is subject to complaint is the denial of benefits to Plaintiff under the Plan. However, completely lacking from the FAC is any indication that Defendant acted or

---

[3] ERISA's definition of "person" includes a "partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

participated in any way in the denial of benefits to Plaintiff. Specifically, Plaintiff's "initial request for preauthorization coverage of the MyoPro [was] made to UHC." FAC at ¶ 42. After UHC "denied [Plaintiff's] request for coverage," Plaintiff's physician Dr. Green "submitted an appeal to UHC's Appeals Unit" and sought to "rebut the various rationale [*sic*] used by UHC to deny preauthorization." *Id.* at ¶ 46. However, "UHC denied Plaintiff's appeal." *Id.* at ¶ 50. At that point, "UHC advised that [Plaintiff] had exhausted the internal appeal process." *Id.* at ¶ 52. Thus, Plaintiff next "filed a request for an Independent Medical Review . . . with the California Department of Insurance." *Id.* at ¶ 54. The Independent Medical Review "was conducted through [Defendant] MAXIMUS by three physicians," all of whom concluded that "the requested device is not likely to be more beneficial for treatment of the patient's medical condition than any available standard therapy." *Id.* at ¶ 62.

Thus, from Plaintiff's own allegations, it is clear that it was UHC that denied Plaintiff's initial request for preauthorization coverage and the subsequent appeal. Moreover, it was Defendant MAXIMUS that conducted the Independent Medical Review. As the Court previously noted with respect to Plaintiff's initial complaint, ECF No. 93 at 9, the FAC is completely silent as to any role Defendant might have played in the denial of benefits to Plaintiff. This silence is thoroughly conspicuous and quite revealing. As noted *supra*, the United States Supreme Court and the Ninth Circuit have made clear that the "central inquiry" in resolving whether a party was an ERISA fiduciary is "whether the party was acting as an ERISA fiduciary '*when taking the action subject to complaint*.'" *Santomenno*, 883 F.3d at 838 (quoting *Pegram*, 530 U.S. at 226) (emphasis added). Defendant simply could not have been acting as a fiduciary "when taking the action subject to complaint" because according to Plaintiff's own pleading, Defendant played no role in denying Plaintiff any benefits. Indeed, Plaintiff even admits that "UHC handles benefit determinations and internal appeals of any benefit denials by the Plan, UHC or UHCIC." FAC. at ¶ 40.

Plaintiff argues that Defendant possessed "discretionary authority" by pointing to the same

10

provisions of the SPD that Plaintiff raised in opposition to Defendant's motion to dismiss Plaintiff's initial complaint. Opp'n at 8. As before, these provisions do not salvage Plaintiff's argument because they concern Defendant's authority with respect to claims for *eligibility* under the Plan, not claims for benefits. For example, Plaintiff points to the fact that the SPD provides that Plan benefits are "subject to the provisions of the Plan, the Trust Agreement, your employer's Adoption Agreement, *and the determination of the Plan Administrator* or health insurance issuer(s)." ECF No. 131-1, Ex. 1 at 1 (emphasis added). However, the SPD explains that the Plan Administrator may make a "determination" as to a "*claim for eligibility* under the Plan . . . pursuant to the Plan and the Trust Agreement." *Id.* at 5 (emphasis added). The instant case concerns a denial of *benefits*, not a denial of *eligibility*. Hence, the provisions concerning eligibility do not establish that Defendant acted as a fiduciary "when taking the action subject to complaint."[4]

Simply put, Defendant took no action in the instant case. The law is clear that "entities that took no action at all with respect to a plan" are not fiduciaries and thus have no fiduciary responsibilities. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 300 (3d Cir. 2014); *see also Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 914 (7th Cir. 2013) ("AUL's decision *not* to exercise its contractual right to substitute different (less expensive) funds for the Leimkuehler Plan does not make it a fiduciary."); *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008) (holding that an "act of omission" cannot render an entity a functional fiduciary).

---

[4] The Court also notes that simply because the Plan Administrator may determine a claim for eligibility, that does not mean the Defendant is a functional fiduciary even with respect to those claims. Under Ninth Circuit law, an entity that performs services or functions "within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary." *Arizona State Carpenters*, 125 F.3d at 721-22. The SPD specifies that the Plan Administrator may only determine a claim for eligibility within the framework of and "under and pursuant to the Plan and the Trust Agreement." ECF No. 131-1, Ex. 1 at 5. Moreover, there is no evidence that Defendant played any role in establishing the "framework of policies, rules, and procedures" used to determine a claim for eligibility. *Arizona State Carpenters*, 125 F.3d at 721-22.

11
Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITH PREJUDICE

Plaintiff seeks to sidestep this case law by arguing that Defendant "failed to oversee the claims process and UHC's incompetent interpretation and application of the Plan terms that resulted in the denial of benefits." Opp'n at 9. Plaintiff therefore appears to assume that Defendant possessed a fiduciary duty to monitor UHC, UHCIC, and/or MAXIMUS. Plaintiff's argument is entirely circular. Plaintiff essentially asserts that Defendant is a fiduciary because it breached a fiduciary duty to monitor. As another district court explained in confronting an identical argument, "[t]his begs the question. If [Defendant] were not a fiduciary . . . , it did not have a duty to monitor [] performance, and therefore could not have breached that duty." *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 681 n.43 (S.D.N.Y. 2018).

In opposition, Plaintiff also argues that Defendant possessed the right to "change insurance carriers or insurance policies at any time." Opp'n at 9. Plaintiff argues that this power automatically created a fiduciary duty to monitor UHC and UHCIC on the part of Defendant. *See, e.g.*, *Coyne v. Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996) ("[T]he power (through plan amendment) to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan . . . . Moreover, this authority carries with it a duty 'to monitor appropriately' those subject to removal.").

The Court need not reach the question of whether the right to change insurers necessarily entails a duty to monitor under Ninth Circuit case law for the following three reasons. First, the FAC itself never alleges that Defendant possessed the right to "change insurance carriers or insurance policies at any time." Opp'n at 9. Instead, this assertion appears only in Plaintiff's opposition to the instant motion to dismiss. "The plaintiff cannot avoid dismissal by alleging new facts in an opposition to a motion to dismiss." *Tharpe v. Diablo Valley College*, No. C 11-02624 SBA, 2011 WL 4080961, at *2 (N.D. Cal. Sept. 13, 2011).

Second, for this argument, Plaintiff relies on the "adoption agreement" that Eric Miller Architects entered into with the Trust. Opp'n at 9; ECF No. 58, Ex. B. A court "generally may not look beyond the four corners of the complaint in ruling on a Rule 12(b)(6) motion, with the

12
Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITH PREJUDICE

exception of documents incorporated into the complaint by reference, and any relevant matters subject to judicial notice." *Fraley v. Facebook, Inc.*, 830 F.Supp.2d 785, 794 (N.D.Cal.2011) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 762 (9th Cir.2007). Unlike the SPD, the FAC does not incorporate the adoption agreement by reference, nor does Plaintiff explain how the adoption agreement is the proper subject of judicial notice.

Third, and finally, even if the Court *did* consider the content of the adoption agreement, the Court would not conclude that Defendant possessed the right to "change insurance carriers or insurance policies at any time." Opp'n at 9. This is so because the adoption agreement states only that "*the Trustees* may add, change or terminate any benefit maintained by the Plan, [and] may change insurance carrier or insurance policies . . . at any time." ECF No. 58, Ex. B at 5. However, the adoption agreement does not state that *Defendant* possesses this authority. Nor does the SPD ever confer this authority on Defendant. Thus, Plaintiff has not sufficiently alleged that Defendant possessed the right to "change insurance carriers or insurance policies at any time." Opp'n at 9.

Finally, Plaintiff argues that Defendant is "the only fiduciary" that can "determine coverage for claims." Opp'n at 13. Plaintiff's argument is based on the SPD's statement that "[i]nsurance carriers shall have full discretionary authority to decide all claims and appeals for benefits under the Plan." ECF No. 131-1, Ex. 1 at 4. Under California law, the above excerpt from the SPD constitutes a discretionary clause, a "provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage." Cal. Ins. Code § 10110.6(a). However, under California law, such discretionary clauses are "void and unenforceable." *Id.*

Plaintiff argues that because the SPD's statement that insurance carriers have discretionary authority to review claims is void under California law, it falls to the Plan Administrator (*i.e.*, Defendant) to review claims for benefits because the SPD also provides that Plan benefits are "subject to the provisions of the Plan, the Trust Agreement, your employer's Adoption

13

Agreement, *and the determination of the Plan Administrator* or health insurance issuer(s)." ECF No. 131-1, Ex. 1 at 1 (emphasis added). As discussed *supra*, however, Plaintiff's argument misrepresents what is meant by "the determination of the Plan Administrator." The SPD explains that the Plan Administrator may make a "determination" as to a "*claim for eligibility* under the Plan . . . pursuant to the Plan and the Trust Agreement." *Id.* at 5 (emphasis added). The SPD never states that the Plan Administrator may make "determinations" as to claims for benefits. In fact, another portion of the SPD that is not part of the discretionary clause states: "The benefits provided under the Plan are insured and underwritten by insurance carriers. The insurance carriers are also responsible for performing various administrative services in connection with the Plan, *including determination and payment of claims*." *Id.* at 3 (emphasis added).

In light of the foregoing, the Court concludes that Defendant is not a functional fiduciary.

### 3. Plaintiff's Claims Fail Because Defendant is Not a Fiduciary

In sum, the Court has determined that Defendant is neither a named fiduciary nor a functional fiduciary.

Therefore, the Court GRANTS Defendant's motion to dismiss Plaintiff's first cause of action: a claim for ERISA benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Courts have held that if a party "had no authority to resolve benefit claims or any responsibility to pay them, [the party] is not the proper defendant for an action to recover benefits as authorized by § 1132(a)(1)(B)." *Echague v. Metropolitan Life Ins. Co.*, 43 F. Supp. 3d 994, 1007 (N.D. Cal. 2014). Here, Defendant was not a fiduciary, played no role in deciding the claim and subsequent appeals, and had no responsibility to pay benefit claims. Thus, Plaintiff's first cause of action fails as to Defendant.

In addition, the Court GRANTS Defendant's motion to dismiss Plaintiff's second cause of action: violation of fiduciary duties of loyalty and due care in violation of ERISA pursuant to 29 U.S.C. § 1132(a)(3). "To establish an action [under] . . . 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity . . . ." *Mathews v. Chevron Corp.*, 362

14

F.3d 1172, 1178 (9th Cir. 2004). Here, the Court determined that Defendant was not a fiduciary acting in a fiduciary capacity. Thus, Plaintiff's second cause of action fails as to Defendant.

Moreover, the Court GRANTS Defendant's motion to dismiss Plaintiff's third cause of action: denial of "full and fair review" of the denial of Plaintiff's claim pursuant to 29 U.S.C. § 1133. Under ERISA, "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review *by the appropriate named fiduciary* of the decision denying the claim." 29 U.S.C. § 1133(2) (emphasis added). Here, Defendant was not the "appropriate named fiduciary" that denied Plaintiff's claim because Defendant was not even a fiduciary. Thus, Plaintiff's third cause of action fails as to Defendant.

### 4. Leave to Amend Is Denied Because Amendment Would Be Futile

The Court previously granted Defendant's motion to dismiss Plaintiff's initial complaint in its entirety under the same rationale laid out in the instant Order: Plaintiff did not allege that Defendant was an ERISA fiduciary. The Court warned that "failure to cure the deficiencies identified in this Order or Defendant's motion and reply will result in dismissal with prejudice of the claims dismissed in this Order." ECF No. 93 at 12. Plaintiff has failed to cure the deficiencies the Court identified. Accordingly, the Court concludes that additional opportunities to amend the FAC would be futile. *See Leadsinger, Inc.*, 512 F.3d at 532. Thus, dismissal with prejudice is appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss with prejudice as to all three causes of action against Defendant.

**IT IS SO ORDERED.**

Dated: January 21, 2020

_____
LUCY H. KOH
United States District Judge

Case No. 18-CV-07454-LHK
ORDER GRANTING MVI ADMINISTRATORS INSURANCE SOLUTIONS, INC.'S MOTION TO DISMISS WITH PREJUDICE