UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BENJAMIN WISE,

              Plaintiff,

    v.

MAXIMUS FEDERAL SERVICES, INC., et al.,

              Defendants.

Case No. 18-CV-07454-LHK

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT UHC'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT MAXIMUS'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 157, 159, 162

      Plaintiff Benjamin Wise brings suit against Defendants United HealthCare Services, Inc. and UnitedHealthCare Insurance Co. (collectively, "UHC"), as well as Defendant MAXIMUS Federal Services, Inc. ("MAXIMUS"), with regard to a denial of benefits to which Plaintiff claims he is entitled under his health insurance plan, which is covered by the Employee Retirement Income Security Act ("ERISA"). Before the Court are Plaintiff's motion for partial summary judgment, Defendant UHC's motion for summary judgment, and Defendant MAXIMUS's motion

for summary judgment.[1]  Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Plaintiff's motion for partial summary judgment; GRANTS in part Defendant UHC's motion for summary judgment; and GRANTS in part Defendant MAXIMUS's motion for summary judgment.

## I.    BACKGROUND

### A.  Factual Background

The Court overviews the structure of Plaintiff's insurance plan, the nature of independent medical review under California law, and the facts surrounding Plaintiff's allegations.

#### 1.    Plaintiff's Insurance Plan

Plaintiff's employer, Eric Miller Architects, participates in the Monterey County Hospitality Association Health & Welfare Plan (the "Plan").  Pursuant to the Plan's Summary Plan Description, "[b]enefits under the Plan are provided by certain insurance providers contracting with the Trust, and are subject to the provisions of the Plan, the Trust Agreement, your employer's Adoption Agreement, and the determination of the Plan Administrator or health insurance issuer(s)." UHC 108.[2]  The Plan provides medical benefits through Defendant UHC.  UHC 111–12.

Defendant UHC, in turn, promulgates a Certificate of Coverage that "describe[s] [] Benefits, as well as [] rights and responsibilities, under the Policy." UHC 174.  The Certificate of Coverage dictates that Defendant UHC will "pay Benefits for Covered Health Services as described in *Section 1: Covered Health Services* and in the *Schedule of Benefits*, unless the service is excluded in *Section 2: Exclusions and Limitations*." UHC 177.  The Certificate of Coverage

---

[1] Plaintiff's motion for partial summary judgment and Defendant MAXIMUS's motion for summary judgment contain notices of motion that are separately paginated from the memoranda of points and authorities in support of the motions.  *See* ECF No. 159 at i; ECF No. 162 at 1–2.  Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities should be contained in one document with a combined page limit.  *See* Civ. Loc. R. 7-2(b).

[2] Citations to the portion of the administrative record filed by Defendant UHC are notated with the word "UHC."  Citations to the portion of the administrative record filed by Defendant MAXIMUS are notated with the word "MAX."

outlines various "Covered Health Services." UHC 180.  In order to qualify as a "Covered Health Service," a treatment or device must be "Medically Necessary."  *Id.*  "Medically Necessary" is defined by the Certificate of Coverage as follows:

> [H]ealth care services provided for the purpose of preventing, evaluating, diagnosing or treating a health condition, Mental Illness, substance-related and addictive disorders, condition, disease or its symptoms, that are all of the following.
>
> - In accordance with *Generally Accepted Standards of Medical Practice.*
>
> - Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for your health condition, Mental Illness, substance-related and addictive disorders, disease or its symptoms.
>
> - Not mainly for your convenience or that of your doctor or other health provider.
>
> - Not more costly than an alternative drug, service(s) or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of your health condition, disease or symptoms.

UHC 253.  "Covered Health Services" includes certain types of "durable medical equipment." UHC 185.  Specifically, "Covered Health Services" includes:

> Durable Medical Equipment that meets each of the following criteria:
>
> - Ordered or provided by a Physician for outpatient use primarily in a home setting.
>
> - Used for medical purposes.
>
> - Not consumable or disposable except as needed for the effective use of covered Durable Medical Equipment.
>
> - Not of use to a person in the absence of a disease or disability.

*Id.*  The Certificate of Coverage further specifies that "[b]enefits under this section do not include any device, appliance, pump, machine, stimulator, or monitor that is fully implanted into the body." *Id.*

A different section of the Certificate of Coverage outlines "Exclusions and Limitations." UHC 203.  The exclusions include "Experimental or Investigational and Unproven Services."

UHC 206. The Certificate of Coverage specifically defines both "Experimental or Investigational Service(s)," UHC 250, as well as "Unproven Service(s)," UHC 258. As to the former, the Certificate of Coverage defines "Experimental or Investigational Service(s)" as:

> medical, surgical, diagnostic, psychiatric, mental health, substance-related and addictive disorders or other health care services, technologies, supplies, treatments, procedures, drug therapies, medications or devices that, at the time a determination is made regarding coverage in a particular case, are any of the following:

> - Not approved by the *U.S. Food and Drug Administration (FDA)* to be lawfully marketed for the proposed use and not identified in the *American Hospital Formulary Service* or the *United States Pharmacoepia Dispensing Information* as appropriate for the proposed use.

> - Subject to review and approval by any institutional review board for the proposed use. (Devices which are *FDA* approved under the *Humanitarian Use Device* exemption are not considered to be Experimental or Investigational.)

> - The subject of an ongoing clinical trial that meets the definition of a Phase I, II or III clinical trial set forth in the *FDA* regulations, regardless of whether the trial is actually subject to *FDA* oversight.

UHC 250. As to the latter, the Certificate of Coverage defines "Unproven Service(s)" as:

> Services, including medications, that are not effective for treatment of the medical condition and/or not to have [sic] a beneficial effect on health outcomes due to insufficient and inadequate clinical evidence from well-conducted randomized clinical trials or cohort studies in the prevailing published peer-reviewed medical literature.

> - Well-conducted randomized clinical trials. (Two or more treatments are compared to each other, and the patient is not allowed to choose which treatment is received.)

> - Well-conducted cohort studies from more than one institution. (Patients who receive study treatment are compared to a group of patients who receive standard therapy. The comparison group must be nearly identical to the study treatment group.)

UHC 258.[3]

> The Certificate of Coverage goes on to explain that Defendant UHC has "a process by

---

[3] The Court addresses a discrepancy concerning this language, *infra* Section III.C.2.

1    which we compile and review clinical evidence with respect to certain health services.  From time

2    to time, we issue medical and drug policies that describe the clinical evidence available with

3    respect to specific health services.  These medical and drug policies are subject to change without

4    prior notice." *Id.*

5           Specifically, Defendant UHC promulgates a document called the "Omnibus Codes."  UHC

6    353.  The Omnibus Codes are a "Medical Policy [that] provides assistance in interpreting

7    [Defendant UHC's] benefit plans." *Id.*  However, the Omnibus Codes dictate that "[w]hen

8    deciding coverage, the member specific benefit plan document must be referenced." *Id.*  Indeed,

9    the Omnibus Codes state that "[t]he terms of the member specific benefit plan document (e.g.,

10   Certificate of Coverage (COC), Schedule of Benefits (SOB), and/or Summary Plan Description

11   (SPD)) may differ greatly from the standard benefit plan upon which this Medical Policy is

12   based." *Id.*  The Omnibus Codes also state that "[i]n the event of a conflict, the member specific

13   benefit plan document supersedes this Medical Policy." *Id.*

14          The Omnibus Codes discuss the "MyoPro myoelectric limb orthosis," the medical device

15   at the center of the instant case.  UHC 449.  The Omnibus Codes state that "[t]he use of the upper

16   limb orthotic known as the MyoPro orthosis is unproven and not medically necessary due to

17   insufficient clinical evidence and/or efficacy in published peer-reviewed medical literature." *Id.*

18   To justify this conclusion, the Omnibus Codes discuss three separate publications that concluded,

19   *inter alia*, that "[a]dding MyoPro to supervised therapy provided little to no additional benefit";

20   that "myoelectric bracing may be more beneficial than [repetitive task practice] only in improving

21   self-reported function and perceptions of overall recovery"; and that "therapist supervised task-

22   specific practice with an integrated robotic device could be as efficacious as manual practice in

23   some subjects with moderate upper extremity impairment." *Id.*  Defendant UHC also promulgates

24   a "Coverage Determination Guideline" that discusses coverage for "Durable Medical Equipment"

25   such as orthotics and "Prosthetic Devices . . . [and] Myoelectric Limbs."  UHC 339–52.

26          **2.      Independent Medical Review Process**

27                                                     5

28   ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART
     DEFENDANT UHC'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT
     MAXIMUS'S MOTION FOR SUMMARY JUDGMENT

The Certificate of Coverage provides for an internal appeals process for adverse determinations made by Defendant UHC. UHC 227. The Certificate of Coverage also contemplates an "Independent External Review Program." UHC 229. Specifically, the Certificate of Coverage explains that "[i]f we deny Benefits because it was determined that the treatment is not Medically Necessary or was an Experimental, Investigational or Unproven Service, you may request an Independent Medical Review (IMR) from the *California Department of Insurance* (*CDI*) at no cost to you." *Id.* In order for a beneficiary to take advantage of the independent medical review process, the beneficiary "must first file an appeal of the denial with [Defendant UHC]." *Id.* The Certificate of Coverage explains that "[i]f [Defendant UHC] uphold[s] our decision or delay[s] responding to your appeal/grievance, then you may file a Request for Assistance or an [Independent Medical Review] request with the California Department of Insurance." *Id.*

The Certificate of Coverage dictates that an independent medical review may be requested for only certain types of denials. *Id.* Of relevance here, the Certificate of Coverage explains that independent medical review may be requested for "[h]ealth claims that have been denied, modified, or delayed by [Defendant UHC] because a Covered Health Service or treatment was not considered medically necessary." *Id.* The Certificate of Coverage also dictates that independent medical review may be requested for "[h]ealth claims that have been denied as being Experimental, Investigational or Unproven Services." *Id.*

The Certificate of Coverage indicates that in an independent medical review, "expert independent medical professional[s] review the medical decisions made by [Defendant UHC] and often decide in favor of the Covered Person getting the medical treatment requested." *Id.* Further, the Certificate of Coverage states that "[t]he decision [that results from the independent medical review] is binding on [Defendant UHC]." UHC 230.

The California Department of Insurance contracts with third-party entities to perform the independent medical reviews contemplated by the Certificate of Coverage. MAX 1. Defendant

Case No. 18-CV-07454-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART
DEFENDANT UHC'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT
MAXIMUS'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

MAXIMUS is one such entity. *Id.* Independent medical reviewers like Defendant MAXIMUS are statutorily authorized to review certain insurer decisions on "whether [a] disputed health care service was medically necessary," Cal. Ins. Code § 10169.3(b), as well as "decision[s] to deny, delay, or modify experimental or investigational therapies," Cal. Ins. § 10145.3(b). When the California Department of Insurance receives a request for an independent medical review, the California Department of Insurance determines whether the underlying decision is eligible for independent medical review under one of these two categories. UHC 229.

When an independent medical reviewer such as Defendant MAXIMUS performs a review of an insurer's "decision to deny, delay, or modify experimental or investigational therapies," Cal. Ins. § 10145.3(b), California law sets out requirements for how the review is conducted. Of relevance here, pursuant to California law, independent medical reviewers must provide "the reasons the requested therapy is or is not likely to be more beneficial for the insured than any available standard therapy, and the reasons that the expert recommends that the therapy should or should not be covered by the insurer, citing the insured's specific medical condition, the relevant documents, and the relevant medical and scientific evidence, including, but not limited to, the medical and scientific evidence as defined in subdivision (d), to support the expert's recommendation." Cal. Ins. Code § 10145.3(c)(3).

### 3. Plaintiff's Request for Coverage of the MyoPro

In 2002, Plaintiff was involved in a vehicular accident that rendered Plaintiff's left arm weakened and numb. UHC 41. On July 5, 2017, Plaintiff was examined by his doctor, Dr. Ken Hashimoto, who assessed Plaintiff and discussed a possible referral for a myoelectric orthotic manufactured by Myomo, Inc. ("Myomo"). UHC 48. Specifically, Myomo manufactures a myoelectric elbow-wrist-hand orthosis known as the MyoPro Motion G ("MyoPro"). UHC 43–44. The MyoPro orthosis works by detecting a patient's own neurological signals through sensors on the arm, in order to amplify a patient's weak neural signal to help move the limb. *Id.*

Dr. Ken Hashimoto referred Plaintiff to the Valley Institute of Prosthetics and Orthotics

7

for further evaluation by certified prosthetists and orthotists. UHC 41, 48. The Valley Institute of

Prosthetics and Orthotics determined that Plaintiff met the criteria to use a myoelectric elbow-

wrist-hand orthosis. UHC 41.

On September 19, 2017, Dr. Brandon Green, a physician consultant for the Valley Institute

of Prosthetics and the Chief Medical Officer of Myomo, submitted a request for coverage of the

MyoPro for use by Plaintiff to Defendant UHC. UHC 41. As part of the submission, Dr. Brandon

Green prepared a history and physical exam review of Plaintiff and his condition. UHC 41–44.

Dr. Brandon Green opined that a myoelectric orthosis is the "best available technology" to help

provide functionality to Plaintiff's left arm. *Id.* Dr. Brandon Green explained that Plaintiff had

undertaken numerous other treatments that had not restored Plaintiff's left arm function. *Id.*

Moreover, Dr. Brandon Green asserted that "there is a wealth of well-designed, peer-reviewed,

published studies over the course of six decades which prove the standardized clinical efficacy and

superiority of robotic, myoelectric technology over traditional, less sophisticated treatment

alternatives for neurological impairments such as [that of Plaintiff]." *Id.* Dr. Brandon Green cited

nineteen publications in connection with the history and physical exam review. *Id.*

In correspondence dated October 10, 2017, Defendant UHC denied Plaintiff's request for

coverage of the MyoPro orthotic. UHC 35. As rationale for the decision, Defendant UHC stated

as follows: "Here is the specific clinical reason for our decision. We have received a request for a

new artificial arm for you. You had an injury to the nerves of the arm. We reviewed the

information received. We reviewed your benefit plan's document. We reviewed your health

plan's medical policy for artificial limbs. This request does not meet your health plan's coverage

criteria. The code submitted is incorrect and a more specific code should be provided. Your

health plan covers only the most cost effective equipment to meet your needs. This request may

not be the most cost effective one. Thus this request is not covered under your health plan." UHC

36. Defendant UHC informed Plaintiff of Plaintiff's right to an internal appeal, as well as

Plaintiff's opportunity to seek an independent medical review in the event that the internal appeal

Case No. 18-CV-07454-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART
DEFENDANT UHC'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT
MAXIMUS'S MOTION FOR SUMMARY JUDGMENT

was denied.  UHC 36–38.  Defendant UHC indicated that the denial was based in part on Defendant UHC's written policy on "Durable Medical Equipment," as well as Defendant UHC's written policy on "Prosthetic Devices."  UHC 35.

### 4.  Plaintiff's Appeal with Defendant UHC

On November 22, 2017, Dr. Brandon Green filed an appeal of Defendant UHC's denial of benefits to Defendant UHC's Appeals Unit.  UHC 31.  Dr. Brandon Green argued that the "Prosthetic Devices" policy was inapplicable to Plaintiff's request for coverage of the MyoPro.  UHC 32.  Dr. Brandon Green also argued that the MyoPro met each of the requirements outlined in Defendant UHC's written policy on "Durable Medical Equipment."  *Id.*  Finally, Dr. Brandon Green informed Defendant UHC that the coverage request had in fact been submitted with the correct code.  *Id.*

On December 11, 2017, Defendant UHC denied Plaintiff's appeal.  UHC 74.  Specifically, in a letter to Plaintiff, Defendant UHC stated as follows: "The request to cover a device (MYOPRO) for you was reviewed.  We looked at the notes sent to us.  We looked at your health plan benefits.  The notes show that you have arm weakness (brachial plexopathy).  The requested device has not been shown to help your condition.  It cannot be covered.  The denial is upheld."  UHC 78.  Defendant UHC cited numerous provisions from the Certificate of Coverage, including the Certificate of Coverage's definition of "Medically Necessary" as well as the Certificate of Coverage's exclusion for "Experimental or Investigational and Unproven Services."  UHC 76.  Defendant UHC also indicated that the decision was based in part on Defendant UHC's Omnibus Codes, along with Defendant UHC's written policies on "Prosthetic Devices" and "Durable Medical Equipment."  UHC 78.  Defendant UHC also advised Plaintiff that Plaintiff had exhausted the internal appeal process, and that Plaintiff had the right to an independent medical review through the California Department of Insurance.  UHC 79.

### 5.  Plaintiff's Independent Medical Review with Defendant MAXIMUS

Shortly after the denial of benefits by Defendant UHC's Appeals Unit, on December 11,

9

2017, Plaintiff filed a request for an independent medical review with the California Department of Insurance. MAX 18. On January 26, 2018, Dr. Brandon Green filed a letter in support of Plaintiff's independent medical review application, along with supporting documentation. MAX 550. In the letter, Dr. Brandon Green criticized the three publications that were cited by Defendant UHC's Omnibus Codes to support Defendant UHC's noncoverage of the MyoPro. MAX 552. Dr. Brandon Green also enclosed two previous determinations by Defendant MAXIMUS in January and September 2017 that the MyoPro was "likely to be more beneficial for treatment of [a particular patient's] medical condition than any available standard therapy." MAX 610, 619. One of these patients suffered from paralysis in the left arm because of a vehicular accident, like Plaintiff. MAX 610.

Defendant MAXIMUS conducted the independent medical review, and the review was conducted by "three independent physician consultants who have no affiliation with" Defendant UHC. MAX 2. Each of the three reviewers employed by Defendant MAXIMUS received copies of Plaintiff's medical records, the letters of Dr. Brandon Green, the Certificate of Coverage, and several of Defendant UHC's medical policies. MAX 4–12. In Defendant MAXIMUS's final report, Defendant MAXIMUS then certified that the reviewers "examined all of the medical records and documentation submitted" to reach their conclusions. MAX 2. Each of the reviewers also "performed a search of the relevant medical literature" and relied on additional publications generated by the search. MAX 4–12. Each reviewer concluded that "the requested equipment is not likely to be more beneficial for treatment of the [Plaintiff's] medical condition than any available standard therapy." MAX 2. Accordingly, Defendant MAXIMUS declared that Defendant UHC's "denial has been upheld." *Id.* Defendant MAXIMUS informed Plaintiff that Plaintiff "cannot appeal this decision. The Department of Insurance does not accept appeals of a MAXIMUS decision. The decision of MAXIMUS is final." *Id.*

### B. Procedural History

On December 11, 2018, Plaintiff filed suit against Defendants MVI Administrators

10

Insurance Solutions, Inc., Monterey County Hospitality Association Health and Welfare Trust, Monterey County Hospitality Association, UHC, and MAXIMUS. ECF No. 1. Plaintiff's initial complaint alleged three causes of action against all defendants: (1) wrongful denial of benefits under ERISA §502(a)(1)(B), 28 U.S.C. §1132; (2) breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and (3) denial of full and fair review under ERISA § 503, 29 U.S.C. § 1133. *Id.* ¶¶ 66–87.

On March 15, 2019, Defendant Monterey County Hospitality Association Health and Welfare Trust filed a cross-claim against United HealthCare Services, Inc. and a third-party complaint against Third-Party Defendant Eric Miller Architects, Plaintiff's employer. ECF No. 37.

On April 26, 2019, Defendant UHC filed a motion to compel binding arbitration as to Defendant Monterey County Hospitality Association Health and Welfare Trust's cross-claim. ECF No. 54. On April 26, 2019, Defendant MVI Administrators Insurance Solutions, Inc. also filed a motion to dismiss Plaintiff's complaint as to Defendant MVI Administrators Insurance Solutions, Inc. ECF No. 55.

On May 22, 2019, Defendant Monterey County Hospitality Association also filed a cross-claim against United HealthCare Services, Inc. and a third-party complaint against Third-Party Defendant Eric Miller Architects. ECF No. 80.

On June 26, 2019, Third-Party Defendant Eric Miller Architects filed a motion to dismiss Defendant Monterey County Hospitality Association's third-party complaint. ECF No. 90.

On July 2, 2019, the Court granted MVI Administrators Insurance Solutions, Inc.'s motion to dismiss the complaint without prejudice. ECF No. 93. On July 18, 2019, Defendant Monterey County Hospitality Association and Third-Party Defendant Eric Miller Architects stipulated to dismiss Defendant Monterey County Hospitality Association's third-party complaint with prejudice. ECF No. 97. The Court granted the stipulation and denied Third-Party Defendant Eric Miller Architects' motion to dismiss as moot. *Id.*

11

1   On August 1, 2019, Plaintiff filed a first amended complaint ("FAC").  ECF No. 101

2   ("FAC").  Plaintiff's FAC alleges the same three causes of action that Plaintiff's initial complaint

3   alleged.  *Id.* at ¶¶ 69–96.

4       Later, on August 5, 2019, the Court granted Defendant United HealthCare Services, Inc.'s

5   motion to compel binding arbitration as to Defendant Monterey County Hospitality Association

6   Health and Welfare Trust's cross-claim.  ECF No. 102.

7       On August 26, 2019, the Court then granted a stipulation between Defendant Monterey

8   County Hospitality Association Health and Welfare Trust and Third-Party Defendant Eric Miller

9   Architects to dismiss Defendant Monterey County Hospitality Association Health and Welfare

10  Trust's third-party complaint with prejudice.  ECF No. 114.  With that stipulation, Third-Party

11  Defendant Eric Miller Architects was no longer a party to the instant case.

12      On August 30, 2019, Defendant MVI Administrators Insurance Solutions, Inc. filed a

13  motion to dismiss the FAC as to Defendant MVI Administrators Insurance Solutions, Inc.  ECF

14  No. 128.

15      On November 8, 2019, the Court granted a stipulation between Defendant United

16  HealthCare Services, Inc. and Defendant Monterey County Hospitality Association to dismiss

17  Defendant Monterey County Hospitality Association's cross-claim with prejudice.  ECF No. 142.

18      On November 15, 2019, the Court then granted a stipulation between Plaintiff and

19  Defendants Monterey County Hospitality Association and Monterey County Hospitality

20  Association Health and Welfare Trust that dismissed Plaintiff's claims against those two entities

21  with prejudice.  ECF No. 145.  With that stipulation, Defendants Monterey County Hospitality

22  Association and Monterey County Hospitality Association Health and Welfare Trust were no

23  longer parties to the instant case.

24      On January 21, 2020, the Court granted Defendant MVI Administrators Insurance

25  Solutions, Inc.'s motion to dismiss the FAC as to Defendant MVI Administrators Insurance

26  Solutions, Inc. with prejudice.  ECF No. 154.  With that order, Defendant MVI Administrators

27

28

Case No. 18-CV-07454-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART
DEFENDANT UHC'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT
MAXIMUS'S MOTION FOR SUMMARY JUDGMENT

Insurance Solutions, Inc. was no longer a party to the instant case.

Accordingly, by the January 24, 2020 deadline for dispositive motions, only three parties remained in the instant case: Plaintiff, Defendant UHC, and Defendant MAXIMUS. On January 24, 2020, Defendant UHC and Defendant MAXIMUS moved for summary judgment, and Plaintiff moved for partial summary judgment. ECF Nos. 157 ("UHC Mot."), 159 ("MAXIMUS Mot."), 162 ("Plaintiff Mot.").

On February 14, 2020, Defendant UHC opposed Plaintiff's motion for partial summary judgment, and vice versa. ECF Nos. 170 ("UHC Opp'n"), 172 ("Plaintiff First Opp'n"). Defendant UHC also objected to exhibits that Plaintiff filed in support of Plaintiff's motion for partial summary judgment. ECF No. 171.[4]

On February 18, 2020, Defendant MAXIMUS opposed Plaintiff's motion for partial summary judgment, and vice versa. ECF Nos. 173 ("MAXIMUS Opp'n"), 174 ("Plaintiff Second Opp'n").

## II. LEGAL STANDARD

### A. Standard of Review in ERISA Cases

Under ERISA § 502, a beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). A claim of denial of benefits in an ERISA case "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Montour*

---

[4] On February 27, 2020, Defendant UHC also filed a reply in support of Defendant UHC's motion for summary judgment. ECF No. 176. However, the operative briefing schedule did not permit replies. ECF No. 79. Accordingly, on February 28, 2020, Defendant UHC withdrew the reply. ECF No. 177. The Court does not consider the unauthorized filing in resolving the instant motions.

1  *v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009).  If the plan confers such

2  discretion, then the denial is reviewed for an abuse of discretion.  *Metropolitan Life Ins. Co. v.*

3  *Glenn*, 554 U.S. 105, 110–11 (2008).

4       **B.  Summary Judgment Standard of Review**

5       Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

6  inferences in the light most favorable to the nonmoving party, there are no genuine disputes of

7  material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

8  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  A fact is "material" if it "might affect the

9  outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if

10  there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.

11  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

12  **III.   DISCUSSION**

13       The parties' motions for summary judgment raise numerous issues that the Court must

14  resolve.  First, the Court addresses the applicable standard of review and the application of Rule

15  56 in this context.  Second, the Court addresses numerous arguments by Defendant MAXIMUS

16  makes to the effect that Defendant MAXIMUS is not a proper defendant in the instant case.

17  Third, the Court addresses Plaintiff's claim for improper denial of ERISA benefits pursuant to

18  ERISA § 502(a)(1)(B).  Fourth, the Court addresses Plaintiff's claim for breach of fiduciary duty

19  pursuant to ERISA § 502(a)(3).  Fifth, and finally, the Court addresses Plaintiff's claim for denial

20  of full and fair review under ERISA § 503.

21       **A.  Applicable Standard of Review**

22       Under ERISA § 502, a beneficiary or plan participant may sue in federal court "to recover

23  benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or

24  to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); *see*

25  *also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) ("[ERISA § 502(a)(1)(B)] is relatively

26  straightforward.  If a participant or beneficiary believes that benefits promised to him under the

27                                    14

28  ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART
DEFENDANT UHC'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT
MAXIMUS'S MOTION FOR SUMMARY JUDGMENT

terms of the plan are not provided, he can bring suit seeking provision of those benefits.").  A claim of denial of benefits in an ERISA case "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009) (explaining that the default standard is de novo).  If the plan confers such discretion, then the denial is reviewed for an abuse of discretion. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 110–11 (2008) (explaining that abuse of discretion applies if the terms of the plan provide as much).

Here, the parties each agree that de novo review is the appropriate standard for the Court to employ.  UHC Mot. at 7 ("There is no dispute between the parties that this Court will review this case de novo."); MAXIMUS Mot. at 9 ("Under Plaintiff's first claim (section 502(a)(1)(B) of ERISA), the standard of review would be de novo."); Plaintiff Mot. at 8 ("The De Novo Standard of Review Applies.").  Accordingly, the Court evaluates Plaintiff's denial of benefits claim in the instant case de novo.  *See Rorabaugh v. Cont'l Cas. Co.*, 321 F. App'x 708, 709 (9th Cir. 2009) (holding that the court may accept parties stipulation to de novo review).

A court that employs de novo review in an ERISA case "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).  Generally, the court's review is limited to the evidence contained in the administrative record.  *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (explaining that in de novo ERISA case, "extrinsic evidence could be considered only under certain limited circumstances").  The Ninth Circuit has explained that the Court may, in its discretion, "allow evidence that was not before the plan administrator." *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943–44 (9th Cir. 1995) (internal quotation marks omitted).  "The district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is

15

necessary to conduct an adequate de novo review of the benefit decision." *Id.* at 944 (internal quotation marks omitted). "In most cases," the Ninth Circuit has explained, "where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator." *Id.* (internal quotation marks omitted). Here, Plaintiff and Defendant MAXIMUS both seek to introduce evidence that is not in the administrative record and that was therefore not before the plan administrator. *E.g.*, ECF Nos. 159-2, 163. Neither party provides any argument as to why additional evidence is "necessary for adequate review of the benefits decision." *Mongeluzo*, 46 F.3d at 944 (internal quotation marks omitted). Accordingly, for the purpose of assessing the instant motions, the Court's review will be confined to the administrative record.

The parties bring motions for summary judgment under Rule 56. Plaintiff Mot. at 1 (citing Federal Rule of Civil Procedure 56); UHC Mot. at 12 (requesting that the Court enter "summary judgment" for Defendant UHC); MAXIMUS Mot. at 2 (citing Federal Rule of Civil Procedure 56). To the extent that Defendant UHC requests that the Court "conduct a trial on the administrative record," Defendant UHC's request is premature. UHC Mot. at 7. Instead, as the Ninth Circuit has explained, "[s]ummary judgment in an ERISA case is only proper where there are no genuine disputes of material fact, and the movant is entitled to judgment as a matter of law." *Gordon v. Met. Life Ins. Co.*, 747 F. App'x 594, 595 (9th Cir. 2019); *see also Spencer v. Caterpillar, Inc. Non-Contributory Pension Plan*, No. C02-2101 SI, 2003 WL 21148467, at *2 (N.D. Cal. May 13, 2003) ("If the standard of review is de novo, then the district court may decide the case by summary judgment only if there are no genuine issues of material fact in dispute."). Hence, ordinary Rule 56 principles guide the Court's analysis. The Court now turns to the competing motions for summary judgment below, beginning with the arguments asserted by Defendant MAXIMUS.

## B. Defendant MAXIMUS Is a Proper Defendant

In Defendant MAXIMUS's motion for summary judgment, Defendant MAXIMUS makes

16

numerous arguments that Defendant MAXIMUS is not a proper defendant as to Plaintiff's claims. First, Defendant MAXIMUS contends that Defendant MAXIMUS is not an ERISA fiduciary. Second, Defendant MAXIMUS argues that Defendant MAXIMUS may not be sued under ERISA § 502(a)(1)(B). Third, and finally, Defendant MAXIMUS contends that Defendant MAXIMUS is statutorily immune from all of Plaintiff's claims. The Court addresses, and ultimately rejects, each of these arguments in turn.

### 1. Defendant MAXIMUS Is a Functional Fiduciary

Defendant MAXIMUS contends that Defendant MAXIMUS is not an ERISA fiduciary. MAXIMUS Mot. at 6–8. According to Defendant MAXIMUS, Defendant MAXIMUS does not "exercise[] discretionary authority on behalf of the plan, its assets, or its administration," and hence does not fit the statutory definition. *Id.* at 6. Plaintiff responds that "[b]y conducting [independent medical review]s and exercising discretion to decide whether to approve or deny benefits to a participant in an ERISA-governed welfare benefit plan, MAXIMUS acts as a 'functional' fiduciary subjecting it to liability for its actions." Plaintiff Second Opp'n at 7. The Court agrees with Plaintiff.

ERISA provides a definition of a "functional" fiduciary:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In other words, to be a "functional" fiduciary, "the person or entity must have control respecting the management of the plan or its assets, give investment advice for a fee, or have discretionary responsibility in the administration of the plan." *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 722 (9th Cir. 1997). Indeed, ERISA defines "fiduciary" "not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262 (1993) (emphasis in

17

1    original).

2         "The [United States] Supreme Court has stressed that the central inquiry [into whether a

3    party was an ERISA fiduciary] is whether the party was acting as an ERISA fiduciary 'when

4    taking the action subject to complaint.'" *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833,

5    838 (9th Cir. 2018) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)).  Specifically,

6    because "a person is a fiduciary under this provision only 'to the extent' the person engages in the

7    listed conduct, a person may be a fiduciary with respect to some actions but not others."  *Depot,*

8    *Inc.*, 915 F.3d at 654.

9         Here, Plaintiff argues that Defendant MAXIMUS served as a functional fiduciary in the

10   instant case because Defendant MAXIMUS exercised "discretion to decide whether to approve or

11   deny benefits to a participant in an ERISA-governed welfare benefit plan."  Plaintiff Second

12   Opp'n at 7.  The Northern District of California's recent decision in *Josef K. v. Cal. Physicians'*

13   *Serv.*, No. 18-CV-06385-YGR, 2019 WL 2342245 (N.D. Cal. June 3, 2019), is instructive.  In

14   *Josef K.*, a plaintiff, E.K., brought a claim for breach of fiduciary duty under ERISA against

15   Defendant MAXIMUS.  *Id.* at *2.  E.K. challenged Defendant MAXIMUS's independent medical

16   review of a claim denial, and E.K. alleged that Defendant MAXIMUS failed "to address facts and

17   materials provided by E.K.'s parents and treatment providers, and [engaged in]

18   mischaracterization of E.K.'s condition and medical history in its final written report."  *Id.*

19   Defendant MAXIMUS asserted in *Josef K.*, as Defendant MAXIMUS does in the instant case, that

20   Defendant MAXIMUS was not an ERISA fiduciary.  *Id.* at *6.

21        The *Josef K.* court rejected Defendant MAXIMUS's arguments.  First, the *Josef K.* court

22   found that Defendant MAXIMUS "exercised significant discretion" when Defendant MAXIMUS

23   issued the relevant determination.  *Id.* at *7.  Second, the *Josef K.* court found that Defendant

24   MAXIMUS's determination was binding on the insurer, which "bestowed Maximus with final

25   authority over whether E.K.'s claim would be paid or not."  *Id.*  Third, and finally, the *Josef K.*

26   court emphasized the fact that "the Plan expressly provides for an [independent medical review]."

27                                            18

*Id.* at *8.

All of the foregoing facts are present in the instant case. First, Defendant MAXIMUS determined whether the MyoPro was "experimental or investigative." MAX 1. Under California law, this determination required Defendant MAXIMUS to provide "the reasons the requested therapy is or is not likely to be more beneficial for the insured than any available standard therapy, and the reasons that [Defendant MAXIMUS] recommends that the therapy should or should not be covered by the insurer, citing the insured's specific medical condition, the relevant documents, and the relevant medical and scientific evidence, including, but not limited to, the medical and scientific evidence as defined in subdivision (d), to support [Defendant MAXIMUS's] recommendation." Cal. Ins. Code § 10145.3(c)(3).

The record demonstrates that Defendant MAXIMUS "exercised significant discretion" to perform the foregoing inquiry. For instance, Defendant MAXIMUS exercised significant discretion to determine the "relevant medical and scientific evidence," which is "not limited" by the statute. Cal. Ins. Code § 10145.3(c)(3). Indeed, the reviewers employed by Defendant MAXIMUS "performed a search of the relevant literature" and each consulted numerous studies and medical authorities that the reviewers personally deemed to be relevant. MAX 5–12. Two of the reviewers relied on entirely different sources from each other. MAX 8, 11. Further, Defendant MAXIMUS's ultimate determination of whether the MyoPro was "experimental or investigative" required Defendant MAXIMUS to determine whether the MyoPro "is or is not likely to be more beneficial for the insured than any available standard therapy" for Plaintiff. Cal. Ins. Code § 10145.3(c)(3). This standard is undefined and abstract. Defendant MAXIMUS possessed discretion to assess the likelihood that the MyoPro would provide medical benefits to Plaintiff and how to compare those benefits to an unspecified course of "standard therapy." MAX 6–12 (performing analysis). The Certificate of Coverage also does not impose any limits on Defendant MAXIMUS's discretion. Indeed, the Certificate of Coverage only dictates that Defendant MAXIMUS would "review the medical decisions made by" Defendant UHC, so long

19

as Defendant UHC's decision fell within the relevant defined categories. UHC 229.

Further, Defendant MAXIMUS possessed final authority over whether Plaintiff received the benefit in the instant case. The Certificate of Coverage dictates that "[t]he decision [of Defendant MAXIMUS] is binding" on Defendant UHC. UHC 230. The Certificate of Coverage also clearly indicates that the outcome of Defendant MAXIMUS's determination would result in either payment for or denial of Plaintiff's claim for the MyoPro. *Id.* Likewise, the California Department of Insurance's description of Defendant MAXIMUS's role in the independent medical review informed Plaintiff that Defendant MAXIMUS would assess whether the MyoPro is "experimental and excluded by a policy provision," and the "decision will be binding on the insurance company." MAX 135.

Finally, as in *Josef K.*, the Certificate of Coverage in the instant case specifically affords Plaintiff the right to independent medical review. UHC 230. As Defendant MAXIMUS concedes, the Certificate of Coverage is clearly a Plan document. MAXIMUS Mot. at 4 ("The pertinent Plan documents include . . . the Evidence of Coverage from UHC."). Hence, Defendant MAXIMUS played an important role contemplated by the Plan itself when Defendant MAXIMUS provided Plaintiff with "expert independent medical professional review." UHC 229. These facts demonstrate that Defendant MAXIMUS "ha[d] control respecting the management of the plan or its assets," and as such, served as a functional fiduciary when Defendant MAXIMUS performed the independent medical review. 29 U.S.C. § 1002(21)(A); *see, e.g.*, *Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1243 (D. Nev. 2008) ("A person with the authority to grant or deny claims, or to review the denial of claims, for benefits under the relevant ERISA plan is a fiduciary.").

Defendant MAXIMUS's arguments to the contrary are unpersuasive. First, Defendant MAXIMUS attempts to distinguish *Josef K.* because *Josef K.* involved a motion to dismiss, not summary judgment. MAXIMUS Opp'n at 4. The difference is not significant here because, as outlined in the foregoing, the dispositive factors the *Josef K.* court discussed are all *established by*

20

*the record* in the instant case.

Second, Defendant MAXIMUS argues that Defendant MAXIMUS "does not make coverage decisions." MAXIMUS Opp'n at 6. Instead, Defendant MAXIMUS "simply addresses the narrow questions presented regarding a given proposed treatment or service." *Id.* The *Josef K.* court considered and rejected precisely the same argument. *Josef K.*, 2019 WL 2342245, at *6 (rejecting argument that Defendant MAXIMUS "was only responsible for providing an external review of a 'discrete issue,' namely, whether E.K.'s treatments were medically necessary based on generally accepted standards of care"). Defendant MAXIMUS appears to rely on the California statutory definition of "coverage decision." *See* Cal. Ins. Code § 10169(b) ("A decision regarding a disputed health care service relates to the practice of medicine and is not a coverage decision."). The label supplied by California law is immaterial because as noted above, ERISA defines "fiduciary" "not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens*, 508 U.S. at 262 (emphasis in original). As discussed in the foregoing, Defendant MAXIMUS exercised "control and authority" over disposition of the Plan assets, subject to Defendant MAXIMUS's broad discretion.

Third, Defendant MAXIMUS argues that Defendant MAXIMUS is not a fiduciary because Defendant MAXIMUS was not "required to rely on [the Certificate of Coverage] or any other Plan documents" when Defendant MAXIMUS conducted the independent medical review. MAXIMUS Mot. at 7. As an initial matter, Defendant MAXIMUS's contention is belied by the record. Indeed, the record in the instant case indicates that Defendant MAXIMUS *did* rely in part on the Certificate of Coverage. Each of the three reviewers employed by Defendant MAXIMUS received a copy of the Certificate of Coverage. MAX 4–12. In Defendant MAXIMUS's final report, Defendant MAXIMUS then certified that the reviewers "examined *all of the medical records and documentation submitted*" to reach their conclusions. MAX 2 (emphasis added).

To the extent Defendant MAXIMUS argues that because Defendant MAXIMUS was not *required* to rely on the Certificate of Coverage, Defendant MAXIMUS cannot be a functional

21

fiduciary, Defendant MAXIMUS cites no authority to support that proposition. On the contrary, the fact that Defendant MAXIMUS could evidently choose on which documents to rely when it performed the role of independent medical reviewer only underscores how much discretion Defendant MAXIMUS wielded. *See, e.g.*, *Arizona State Carpenters Pension Trust Fund*, 125 F.3d at 721–22 ("A person or entity who performs only ministerial services or administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary.").

Fourth, and finally, Defendant MAXIMUS contends that Defendant MAXIMUS is not a functional fiduciary because "the health plan was *required* to comply with California's external review process, . . . and therefore had no independent relationship with MAXIMUS." MAXIMUS Mot. at 8. Whether Defendant MAXIMUS and Defendant UHC had an "independent relationship" is irrelevant. As explained, "the central inquiry [into whether a party was an ERISA fiduciary] is whether the party was acting as an ERISA fiduciary 'when taking the action subject to complaint.'" *Santomenno*, 883 F.3d 833, 838 (9th Cir. 2018) (quoting *Pegram*, 530 U.S. at 226). In the instant case, Defendant MAXIMUS provided the independent medical review of Plaintiff's claim, and Defendant MAXIMUS "exercised significant discretion" as to whether Plaintiff's claim for the MyoPro would be paid. This is sufficient to render Defendant MAXIMUS a functional fiduciary in the instant case. The Court now turns to Defendant MAXIMUS's argument that Defendant MAXIMUS is not a proper defendant under ERISA § 502(a)(1)(B).

### 2. Defendant MAXIMUS Is a Proper Defendant as to Plaintiff's ERISA § 502(a)(1)(B) Claim

Defendant MAXIMUS asserts that Plaintiff may not assert a claim under ERISA § 502(a)(1)(B) against Defendant Maximus. MAXIMUS Mot. at 5. Specifically, Defendant MAXIMUS contends that Defendant MAXIMUS "has no authority to interpret Plan documents in order to decide whether the terms of the Plan provide coverage of the MyoPro orthosis, and has no

22

authority to pay for coverage of the MyoPro orthosis." *Id.* Plaintiff disagrees, and asserts that "[b]ecause MAXIMUS made a final and binding benefits determination that [Plaintiff's] request for coverage of the MyoPro should be denied, it is a proper party subject to liability for its improper denial of benefits." Plaintiff Second Opp'n at 4. The Court agrees with Plaintiff.

In *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona*, 770 F.3d 1282 (9th Cir. 2014), the Ninth Circuit provided guidance as to which parties constitute proper defendants for actions for improper denial of benefits under ERISA § 502(a)(1)(B). In *Spinedex*, the Ninth Circuit explained that "proper defendants under § 1132(a)(1)(B) for improper denial of benefits at least include ERISA plans, formally designated plan administrators, insurers or other entities responsible for payment of benefits, and de facto plan administrators that improperly deny or cause improper denial of benefits." *Id.* at 1297. The Ninth Circuit also explained that "[s]uits under § 1132(a)(1)(B) to recover benefits may be brought against the plan as an entity *and against the fiduciary of the plan*." *Id.* (internal quotation marks omitted, emphasis in original). The ultimate question is whether an entity is a "logical defendant" for an action under ERISA § 502(a)(1)(B). *Id.*

The Court concluded, *supra*, that Defendant MAXIMUS served as a functional fiduciary when Defendant MAXIMUS performed the independent medical review for Plaintiff. The record in the instant case also demonstrates that Defendant MAXIMUS "cause[d] improper denial of benefits" to Plaintiff, to the extent that the denial of MyoPro was in fact improper. *See, e.g.*, *Smith v. Univ. of S. Cal.*, No. LA CV18-06111 JAK (AFMx), 2019 WL 988681, at *4 (C.D. Cal. Jan. 22, 2019) ("Based upon the filings and arguments presented, there is a basis to conclude that there are sufficient allegations that [Defendant's] decision-making caused the alleged improper denial of benefits to Plaintiff."). Indeed, as discussed in the foregoing, Defendant MAXIMUS's decision in the independent medical review was binding on Defendant UHC. UHC 229–30. If Defendant MAXIMUS had made a different decision, Plaintiff would have received the MyoPro as a benefit of the Plan. *Id.* Under *Spinedex*, this is sufficient.

23

Defendant MAXIMUS's arguments to the contrary are unpersuasive. First, Defendant MAXIMUS claims that "[b]y law, MAXIMUS is limited in its review here to an evaluation of whether a service/treatment is investigational in light of Plaintiff's medical records and relevant standards in the scientific community." MAXIMUS Mot. at 5. Defendant MAXIMUS's contention is irrelevant. The Ninth Circuit has indicated that functional fiduciaries like Defendant MAXIMUS are proper defendants for claims under ERISA § 502(a)(1)(B) if they "cause improper denial of benefits" under ERISA. *Spinedex*, 770 F.3d at 1297–98. On the record in this case, Defendant MAXIMUS meets that definition.

Similarly, Defendant MAXIMUS argues that Defendant "MAXIMUS does not have 'final authority' with respect to a Plan," because Defendant MAXIMUS lacked authority to "authorize or disallow benefit payments in cases where a dispute exists as to the interpretation of plan provisions." MAXIMUS Mot. at 5. However, once again, the record demonstrates that Defendant MAXIMUS's decision was "binding on the insurance company [*i.e.*, Defendant UCH]." MAX 493. Accordingly, Defendant MAXIMUS represents a "logical defendant" as to Plaintiff's claim for wrongful denial of benefits under ERISA § 502(a)(1)(B). The Court now turns to Defendant MAXIMUS's argument that Defendant MAXIMUS is entitled to statutory immunity.

### 3. Defendant MAXIMUS Is Not Entitled to Statutory Immunity

Finally, Defendant MAXIMUS argues that Defendant MAXIMUS "is [] immune from each and all of Plaintiff's claims." MAXIMUS Mot. at 9. Specifically, Maximus contends that two provisions of California law, Cal. Civ. Code § 43.98 and Cal. Insurance Code § 10169.2(b), render Defendant MAXIMUS statutorily immune from Plaintiff's claims. *Id.* The Court disagrees.

California Insurance Code § 10169.2(b) dictates that "[t]he independent medical review organizations and the medical professionals retained to conduct reviews shall be deemed to be medical consultants for purposes of Section 43.98 of the Civil Code." Cal. Insurance Code § 10169.2(b). As an independent medical review organization, Defendant MAXIMUS is therefore a

24

"medical consultant[] for purposes of Section 43.98 of the Civil Code." *Id.*

California Civil Code § 43.98 has no applicability in the instant case. California Civil Code § 43.98 dictates that "[t]here shall be no monetary liability on the part of, and no cause of action shall arise against, any consultant on account of any communication by that consultant to the Director of the Department of Managed Health Care or any other officer, employee, agent, contractor, or consultant of the Department of Managed Health Care, when that communication is for the purpose of determining whether health care services have been or are being arranged or provided in accordance with the Knox-Keene Health Care Service Plan Act of 1975 (Chapter 2.2 (commencing with Section 1340) of Division 2 of the Health and Safety Code)." Cal. Civ. Code § 43.98. In order for immunity to apply, the consultant must also make a number of further showings, such as absence of malice, reasonable effort to obtain facts, and more. *Id.*

In the instant case, the record is devoid of any communication between Defendant MAXIMUS and "the Director of the Department of Managed Health Care or any other officer, employee, agent, contractor, or consultant of the Department of Managed Health Care." *Id.* Instead, the record shows that Defendant MAXIMUS was enlisted to perform the independent medical review by the *California Department of Insurance*, a separate California state agency. *See, e.g.*, MAX 14 (letter from California Department of Insurance that requested that Defendant MAXIMUS conduct the independent medical review of Plaintiff's dispute); MAX 490 (email from California Department of Insurance that requested that Defendant MAXIMUS conduct the independent medical review of Plaintiff's dispute). Accordingly, Defendant MAXIMUS is not entitled to statutory immunity under California Civil Code § 43.98.

In sum, and in light of the foregoing, the Court concludes that Defendant MAXIMUS's arguments for summary judgment on the basis that Defendant MAXIMUS is not a proper defendant in the instant case fail. The Court DENIES Defendant MAXIMUS's motion for summary judgment to the extent that Defendant MAXIMUS asserts that Defendant MAXIMUS is not a proper defendant under ERISA § 502(a)(1)(B), that Defendant MAXIMUS is not an ERISA

25

Case No. 18-CV-07454-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT UHC'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT MAXIMUS'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

fiduciary, and that Defendant MAXIMUS is statutorily immune from Plaintiff's claims.

The Court now proceeds to consider the parties' specific arguments for summary judgment as to each of Plaintiff's claims, starting with Plaintiff's claim for wrongful denial of benefits under ERISA § 502(a)(1)(B).

**C. Improper Denial of Benefits under ERISA § 502(a)(1)(B)**

All three parties move for summary judgment in connection with Plaintiff's claim for improper denial of benefits under ERISA § 502(a)(1)(B). Plaintiff contends that Plaintiff's request for the MyoPro falls within the Certificate of Coverage's definitions of "Covered Health Service" and "Durable Medical Equipment." Plaintiff Mot. at 12–13; UHC 180, 185. Neither Defendant UHC nor Defendant MAXIMUS argues otherwise. Accordingly, the Court assumes for the sake of the instant motions that the MyoPro falls within these coverage definitions. Moreover, Plaintiff also contends that Plaintiff's request for the MyoPro does not fall within the Certificate of Coverage's exclusion for "Experimental or Investigational Service(s)." Plaintiff Mot. at 14. Once again, neither Defendant UHC nor Defendant MAXIMUS argues otherwise. Accordingly, the Court assumes for the instant motions that Plaintiff's request for the MyoPro does not fall within the Certificate of Coverage's exclusion for "Experimental or Investigational Service(s)."

Instead, the parties' dispute centers on the applicability of the Certificate of Coverage's "Unproven Service(s)" exclusion. Specifically, the Certificate of Coverage defines "Unproven Service(s)" as:

> Services, including medications, that are not effective for treatment of the medical condition and/or not to have [sic] a beneficial effect on health outcomes due to insufficient and inadequate clinical evidence from well-conducted randomized clinical trials or cohort studies in the prevailing published peer-reviewed medical literature.

- Well-conducted randomized clinical trials. (Two or more treatments are compared to each other, and the patient is not allowed to choose which treatment is received.)

- Well-conducted cohort studies from more than one institution. (Patients who receive

26

study treatment are compared to a group of patients who receive standard therapy. The comparison group must be nearly identical to the study treatment group.) UHC 258. In an ERISA case that involves de novo review, the general rule is that the plaintiff bears the burden of demonstrating that a benefit is covered. *See Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) ("[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant."). Defendant UHC maintains that the general rule applies here. UHC Mot. at 7. Defendant UHC is incorrect.

Because the question before the Court is the applicability of an *exclusion of coverage*, the burden of proof in fact rests with Defendant UHC and Defendant MAXIMUS to show that the "Unproven Service(s)" provision applies. *See Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1557 (9th Cir. 1991) ("In insurance litigation, while the burden is on the insurer to prove a claim covered falls within an exclusion, the burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage." (internal quotation omitted)); *see also Dubaich v. Connecticut Gen. Life Ins. Co.*, No. CV 11–10570 DMG (AJWx), 2013 WL 3946108, at *9 (C.D. Cal. July 31, 2013) ("[Defendant] bears the burden of demonstrating that an exclusion applies."). The burden of proof is preponderance of evidence. *See, e.g., Filarsky v. Life Ins. Co. of N.A.*, 391 F.Supp.3d 928, 938 (N.D. Cal. 2019) (applying preponderance of evidence on ERISA case in de novo review). Moreover, "[u]nder general principles of insurance law, exclusions are construed narrowly." *Dowdy v. Met. Life Ins. Co.*, 890 F.3d 802, 810 (9th Cir. 2018).

Accordingly, the question before the Court is whether the record contains a genuine issue of material fact that would permit Defendant UHC and Defendant MAXIMUS to meet their burdens to demonstrate the applicability of the "Unproven Service(s)" exclusion. First, the Court considers the argument that the Omnibus Codes independently resolve the question. Second, the Court considers the argument that the medical evidence in the administrative record would permit Defendant UHC and Defendant MAXIMUS to demonstrate the applicability of the "Unproven Service(s)" exclusion.

27

1. **The Omnibus Codes Do Not Resolve the Question of the Applicability of the "Unproven Service(s)" Exclusion**

As an initial matter, Defendant UHC argues that the Omnibus Codes alone resolve the issue of whether the MyoPro is covered by the Plan. UHC Mot. at 9. The Court disagrees. The Omnibus Codes do not resolve the coverage issue.

According to Defendant UHC, the Omnibus Codes constitute "terms of the Plan" that are binding on Defendant UHC. *Id.* ("[T]he Omnibus Codes categorically classify the MyoPro orthosis as 'Unproven' [and] 'not medically necessary.'"). Under the Omnibus Codes, "[t]he use of the upper limb orthotic known as the MyoPro orthosis is unproven and not medically necessary due to insufficient clinical evidence and/or efficacy in published peer-reviewed medical literature." UHC 449. However, it is clear that the Omnibus Codes do not decisively resolve the issue of whether the MyoPro is medically necessary or unproven pursuant to the terms of the Plan.

Under Ninth Circuit precedent, "[a]n ERISA plan is a contract that we interpret 'in an ordinary and popular sense as would a [person] of average intelligence and experience.'" *See Harlick v. Blue Shield of California*, 686 F.3d 699, 708 (9th Cir. 2012) (citation omitted). The Certificate of Coverage describes the Omnibus Codes as follows: "We have a process by which we compile and review clinical evidence with respect to certain health services. From time to time, we issue medical and drug policies that describe the clinical evidence available with respect to specific health care services. These medical and drug policies are subject to change without prior notice." UHC 258.

By the terms of the Certificate of Coverage, then, the Omnibus Codes are only meant to "describe the clinical evidence available" as to a particular service. *Id.* Further, the Omnibus Codes themselves do not constitute binding terms of the Plan. The Omnibus Codes represent a "Medical Policy [that] *provides assistance* in interpreting [Defendant UHC's] benefit plans." UHC 353 (emphasis added). The Omnibus Codes dictate that "[w]hen deciding coverage, the member specific benefit plan document must be referenced." *Id.* Indeed, the Omnibus Codes states that "[t]he terms of the member specific benefit plan document (e.g., Certificate of Coverage

28

(COC), Schedule of Benefits (SOB), and/or Summary Plan Description (SPD)) may differ greatly from the standard benefit plan upon which this Medical Policy is based." *Id.* The Omnibus Codes also state that "[i]n the event of a conflict, the member specific benefit plan document supersedes this Medical Policy." *Id.*

Accordingly, because the Omnibus Codes themselves do not constitute binding Plan terms, the fact that the Omnibus Codes categorize the MyoPro as subject to the "Unproven Service(s)" exclusion does not resolve the question of whether the MyoPro is in fact subject to the exclusion. Instead, the Court must examine the terms of the Certificate of Coverage and the evidence in the administrative record directly.

### 2. There is a Genuine Issue of Material Fact as to Whether the "Unproven Service(s)" Exclusion Applies

The Court must now determine whether there is a genuine issue of material fact as to whether the "Unproven Service(s)" exclusion bars Plaintiff's request for the MyoPro. In order to do so, the Court must first determine what the "Unproven Service(s)" exclusion means. For the reasons the Court discusses below, this task is surprisingly difficult in the instant case.

As an initial matter, the "Unproven Service(s)" exclusion contained within the Certificate of Coverage appears to contain a typographical error. Indeed, the Certificate of Coverage indicates that the "Unproven Service(s)" provision applies to "services, including medications, that are not effective for treatment of the medical condition and/or not to [*sic*] have a beneficial effect on health outcomes due to insufficient and inadequate clinical evidence from well-conducted randomized controlled trials or cohort studies in the prevailing published peer-reviewed medical literature." UHC 258. Defendant UHC inexplicably quotes this language, from precisely the same page of the administrative record, differently. According to Defendant UHC, "Unproven Service(s)" are defined as "services, including medications, that are *determined* not *to be* effective for treatment of the medical condition . . . ." UHC Mot. at 4 (quoting UHC 258) (emphasis added). On Plaintiff's appeal of the benefit denial with Defendant UHC, Defendant UHC also

wrongly quoted the foregoing language in the notice to Plaintiff of the appeal's denial. UHC 78.

This discrepancy is troubling. However, because it is not clear whether the meaning is materially different under either formulation, because Plaintiff received notice of Defendant UHC's formulation of the provision during the benefit process, and because Plaintiff does not argue that the distinction is significant here, the Court assumes for the sake of the instant motions that Defendant UHC's formulation applies.

Even on Defendant UHC's formulation, however, the language of the "Unproven Service(s)" exclusion is far from a model of clarity. Once again, according to Defendant UHC, the "Unproven Service(s)" exclusion applies for "services, including medications, that are determined not to be effective and/or not to have a beneficial effect on health outcomes due to insufficient and inadequate clinical evidence from well-conducted randomized controlled trials or cohort studies in the prevailing published peer-reviewed medical literature." UHC Mot. at 4.

As an initial matter, the "and/or" is ambiguous. Whether the requirement is conjunctive or disjunctive affects the scope of the exclusion. Because the Court must resolve any ambiguities in favor of Plaintiff, and because exclusions in insurance plans are construed narrowly, the Court concludes that Defendant UHC and Defendant MAXIMUS must show that the MyoPro may be "determined not to be effective *and* not to have a beneficial effect on health outcomes due to insufficient and inadequate clinical evidence from well-conducted randomized controlled trials or cohort studies in the prevailing published peer-reviewed medical literature." *See, e.g.*, *O'Neal v. Life Ins. Co. of North America*, 10 F. Supp. 3d 1132, 1136 (D. Mont. 2014) ("Terms that are not defined by the plan (and other ambiguities) are to be construed against the drafter of the plan.").

A further difficulty arises from the fact that the "Unproven Service(s)" exclusion requires Defendant UHC to determine that a treatment is "not . . . effective" and does not "have a beneficial effect on health outcomes," based on "insufficient and inadequate clinical evidence." This is subtly different from an exclusion that applied when it *could not be determined* that a particular treatment was effective or had a beneficial effect on health outcomes.

30

Defendant UHC appears to read the exclusion to apply when it could not be determined that a particular treatment was effective or had a beneficial effect on health outcomes. *E.g.*, UHC Mot. at 9 (suggesting that Plaintiff must "identify [] published peer-reviewed medical literature that establishes the safety and/or efficacy of this device when used to treat Plaintiff's condition"). However, the Court cannot rewrite the "Unproven Service(s)" exclusion for the benefit of Defendant UHC and Defendant MAXIMUS. As the United States Supreme Court has explained, "[t]he principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan." *Heimseshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013).

The Court therefore construes the "Unproven Service(s)" exclusion to apply only when the outcome of qualifying studies *affirmatively suggest* that a treatment is ineffective and does not have a beneficial impact on health outcomes. This is a higher threshold than mere absence of evidence; by its terms, the exclusion instead requires the *actual existence of evidence* of ineffectiveness and lack of impact. This result is compelled by the principles of ERISA, which require the Court to construe exclusions narrowly, enforce Plan terms as written, and resolve ambiguities against the drafter. *See Heimseshoff*, 571 U.S. at 108 (explaining that ERISA terms should generally be enforced as written); *Dowdy v. Metro. Life Ins. Co.*, 890 F.3d 802, 810 (9th Cir. 2018) ("Under general principles of insurance law, exclusions are construed narrowly."); *O'Neal v. Life Ins. Co. of North America*, 10 F. Supp. 3d at 1136 ("Terms that are not defined by the plan (and other ambiguities) are to be construed against the drafter of the plan.").

The Court must now determine whether there is a genuine issue of material fact as to whether Defendant UHC and Defendant MAXIMUS can demonstrate that the "Unproven Service(s)" exclusion applies. The Court concludes that there is a genuine issue of material fact on this issue.

Specifically, the Omnibus Codes survey three publications that are purportedly relevant to Plaintiff's use of the MyoPro. The first publication concluded that "[a]dding MyoPro to

31

supervised therapy provided little to no additional benefit" for participants. UHC 449. Moreover, the second publication concluded that "myoelectric bracing may be more beneficial than [repetitive task practice] only in improving self-reported function and perceptions of overall recovery." *Id.* These two publications, and the Omnibus Codes' discussion of them, do constitute evidence that the MyoPro has been "determined not to be effective and not to have a beneficial effect on health outcomes due to insufficient and inadequate clinical evidence from well-conducted randomized controlled trials or cohort studies in the prevailing published peer-reviewed medical literature." The existence and apparent conclusions of these studies produces a genuine issue of material fact as to the applicability of the "Unproven Service(s)" exception to Plaintiff's desired use of the MyoPro. *See, e.g., Esdale v. Am. Cmty. Mut. Ins. Co.*, 914 F. Supp. 270, 273 (N.D. Ill. 1996) ("[D]efendant is only entitled to summary judgment if the undisputed facts are that OHTA deems the procedure to be experimental or investigational for the treatment of Stage II breast cancer, and facts are not undisputed based on the OHTA report.").

On the other hand, Plaintiff contends that the two studies' conclusions are flawed in various ways, and Plaintiff points to countervailing opinions of Dr. Brandon Green. *E.g.*, MAX 552 (criticizing studies cited by Omnibus Codes and conclusions drawn from studies). On a motion for summary judgment, however, the Court cannot evaluate credibility and weigh the evidence. These determinations must await a trial on the administrative record under Federal Rule of Civil Procedure 52. *See, e.g., Bigham v. Liberty Life Assurance Co. of Boston*, 148 F. Supp. 3d 1159, 1162 (W.D. Wash. 2015) ("[W]hen applying the de novo standard in an ERISA benefits case, a trial on the administrative record, which permits the court to make factual findings, evaluate credibility, and weigh evidence, appears to be the appropriate proceeding to resolve the dispute."); *see also Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 812 F. Supp. 2d 1027, 1032 (N.D. Cal. 2011) ("De novo review on ERISA benefits claims is typically conducted as a bench trial under Rule 52.").

Because there is a genuine issue of material fact as to whether Defendant UHC and

32

Defendant MAXIMUS may prove the applicability of the "Unproven Service(s)" exclusion, the Court DENIES Plaintiff's motion for partial summary judgment as to Plaintiff's ERISA § 502(a)(1)(B) claim. The Court also DENIES Defendant UHC's and Defendant MAXIMUS's motions for summary judgment as to Plaintiff's ERISA § 502(a)(1)(B) claim. The Court now turns to Plaintiff's ERISA § 502(a)(3) claim.

### D. Breach of Fiduciary Duty

The Court now turns to Plaintiff's claim under ERISA § 502(a)(3) for breach of fiduciary duty. "To establish an action for equitable relief under . . . 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity, and must violate ERISA-imposed fiduciary obligations." *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004). In other words, the elements Plaintiff must prove to prevail on the claim under ERISA § 502(a)(3) for breach of fiduciary duty are as follows: (1) Defendant UHC and Defendant MAXIMUS were Plan fiduciaries; (2) Defendant UHC and Defendant MAXIMUS breached their fiduciary duties; and (3) the breach caused harm to Plaintiff. *See LYMS, Inc. v. Millimaki*, No. 08-CV-1210-GPC-NLS, 2013 WL 1147534, at *9 (S.D. Cal. Mar. 19, 2013) ("To state a claim for breach of fiduciary duty under ERISA, Plaintiffs must establish that (1) Defendants were Plan fiduciaries, (2) Defendants breached their fiduciary duties, and (3) the breach caused harm to the Plaintiffs." (citing *Brosted v. Unum Life Ins. Co.*, 421 F.3d 459, 465 (7th Cir. 2005)).

Defendant UHC is a named fiduciary. Moreover, as discussed supra, Defendant MAXIMUS is a functional fiduciary. Accordingly, there is no genuine issue of material fact that Plaintiff meets the first element as to both Defendant UHC and Defendant MAXIMUS. However, there is a genuine issue of material fact as to whether Plaintiff meets the remaining two elements. Plaintiff asserts that Defendant UHC and Defendant MAXIMUS breached their duties of due care and loyalty. The Court addresses each theory in turn. The Court then turns to arguments raised by Defendant UHC and Defendant MAXIMUS that they are entitled to summary judgment on Plaintiff's breach of fiduciary duty claim to the extent the claim seeks an injunction and

restitution.

### 1. Breach of the Duty of Due Care

First, Plaintiff asserts that Defendant UHC and Defendant MAXIMUS breached the duty of due care. *See* 29 U.S.C. § 1104(a)(1)(B) (requiring that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims"). Plaintiff claims that "[i]n failing to act prudently, and in failing to act in accordance with the documents governing the Plan, UHC, . . . [and] Maximus . . . have violated their fiduciary duty of care." FAC ¶ 81; *see also* 29 U.S.C. § 1104(a)(1)(D) (requiring that fiduciaries act "in accordance with the documents and instruments governing the plan"). The Court concluded *supra* that there is a genuine issue of material fact as to whether the Plan in fact covers MyoPro. Accordingly, Plaintiff's theory that Defendant UHC and Defendant MAXIMUS breached the duty of due care because they "fail[ed] to act in accordance with the documents governing the Plan" must also survive summary judgment.

Plaintiff alleges a separate theory as to Defendant MAXIMUS. According to Plaintiff, Defendant MAXIMUS reversed denials of coverage of the MyoPro multiple times in the past. Plaintiff Mot. at 19. Two of these previous decisions are contained within the administrative record. MAX 609–26. The reviewers in those decisions examined the particular medical records of the patients in those cases and based their decisions on the specific features of those patients' conditions. *Id.* For instance, one reviewer cited the fact that a patient suffered from "the physiological equivalent of an incomplete upper motor neuron lesion," which made that patient's condition similar to that of a stroke victim. MAX 616. Moreover, it is unclear whether either patient sought to use the MyoPro for daily, long-term use, as Plaintiff does here. MAX 609–26.

Thus, the Court cannot conclude as a matter of law that merely because Defendant MAXIMUS's independent reviewers reached a different conclusion in cases that involved different patients, Defendant MAXIMUS breached the duty of due care in the instant case.

34

Further, Plaintiff's harm appears to depend on the success of Plaintiff's argument that the MyoPro is in fact covered by the Plan, and the Court has concluded that this question is subject to a genuine issue of material fact. *See, e.g.*, *Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan*, No. CV-15-01547-PHX-DLR, 2016 WL 107838, at *3 (D. Ariz. Jan. 11, 2016) (explaining that plaintiff's "breach of fiduciary duty claim depends on the success of her claim for wrongfully denied benefits; if she is unsuccessful on Count I, then Count II necessarily fails because she has not alleged separate and distinct harm"). Accordingly, summary judgment as to Plaintiff's claim under ERISA § 502(a)(3) for breach of the duty of due care is inappropriate because there is a genuine issue of material fact as to whether Plaintiff can satisfy the second element (breach of duty of due care) and third element (harm to Plaintiff) of the claim under ERISA § 502(a)(3) for breach of the duty of due care. The Court now addresses Plaintiff's theory as to breach of the duty of loyalty.

### 2. Breach of the Duty of Loyalty

Plaintiff also alleges that Defendant UHC and Defendant MAXIMUS breached the duty of loyalty. *See* 29 U.S.C. § 1104(a)(1)(A) (requiring that fiduciaries act "for the exclusive purposes of[] providing benefits to participants and their beneficiaries[] and defraying reasonable expenses of administering the plan"). Plaintiff's theory as to the breach of the duty of loyalty is similar to Plaintiff's theory as to the breach of the duty of due care. Specifically, according to Plaintiff, Defendant "UHC, . . . [and Defendant] Maximus . . . have violated their fiduciary duty of loyalty to [Plaintiff] by, among other things, refusing to cover the Myomo MyoPro, which costs in excess of $80,000, to their own advantage, at the expense of the Plan's participants and beneficiaries." FAC ¶ 89. Plaintiff further claims that the Omnibus Codes constitute a "blanket policy" adopted by Defendant UHC to avoid coverage of the MyoPro. Plaintiff Mot. at 16.

As an initial matter, as discussed *supra*, the Omnibus Codes do not impose binding terms on Defendant UHC. Instead, the Omnibus Codes represent a "Medical Policy [that] *provides assistance* in interpreting [Defendant UHC's] benefit plans." UHC 353 (emphasis added). The

35

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT UHC'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT MAXIMUS'S MOTION FOR SUMMARY JUDGMENT

Omnibus Codes dictate that "[w]hen deciding coverage, the member specific benefit plan document must be referenced." *Id.* Indeed, the Omnibus Codes state that "[t]he terms of the member specific benefit plan document (e.g., Certificate of Coverage (COC), Schedule of Benefits (SOB), and/or Summary Plan Description (SPD)) may differ greatly from the standard benefit plan upon which this Medical Policy is based." *Id.* The Omnibus Codes also state that "[i]n the event of a conflict, the member specific benefit plan document supersedes this Medical Policy." *Id.* On their own terms, then, the Omnibus Codes do not prove the existence of a "blanket policy" adopted by Defendant UHC.

Further, it is true that Defendant UHC and Defendant MAXIMUS did not cover the MyoPro in the instant case, or in Plans with the same terms as the ones that govern the instant case. However, the Court has concluded that there is a genuine issue of material fact as to whether the Plan covers Plaintiff's request for the MyoPro in the first place. Thus, there is a genuine dispute of material fact as to whether Defendants breached their duty of loyalty and whether Plaintiff suffered resulting harm. Because there is a genuine dispute of material fact as to the second element (breach of duty of loyalty) and the third element (harm to Plaintiff) of Plaintiff's claim under ERISA § 502(a)(3) for breach of the duty of loyalty, summary judgment on this claim is inappropriate. *See, e.g.*, *Mullin*, 2016 WL 107838, at *3 (explaining that plaintiff's "breach of fiduciary duty claim depends on the success of her claim for wrongfully denied benefits; if she is unsuccessful on Count I, then Count II necessarily fails because she has not alleged separate and distinct harm").

The Court now turns to arguments raised by Defendant UHC and Defendant MAXIMUS that they are entitled to summary judgment on Plaintiff's breach of fiduciary duty claim to the extent the claim seeks an injunction and restitution.

### 3. Availability of an Injunction and Restitution

Defendant UHC contends that Plaintiff's claim under ERISA § 502(a)(3) to the extent it seeks an injunction against Defendant UHC must be denied as a matter of law. First, Defendant

36

UHC contends that such an injunction is duplicative of the relief Plaintiff seeks under ERISA § 502(a)(1)(B). UHC Opp'n at 8. However, in *Moyle v. Liberty Mut. Retirement Ben. Plan*, the Ninth Circuit explained that a plaintiff could plead alternative theories of recovery under ERISA § 502(a)(1)(B) and ERISA § 502(a)(3), so long as the plaintiff does not ultimately "obtain[] double recoveries." 823 F.3d 948, 960 (9th Cir. 2016). The authorities cited by Defendant UHC are no longer good law to the extent they hold otherwise. *See id.* at 962 ("Some of our pre-*Amara* cases held that litigants may not seek equitable remedies under § 1132(a)(3) if § 1132(a)(1)(B) provides adequate relief. . . . However, those cases are now 'clearly irreconcilable' with *Amara* and are no longer binding."). In the instant case, Plaintiff will be unable to obtain double recovery under ERISA § 502(a)(1)(B) and ERISA § 502(a)(3), but that does not mean that Defendant UHC is entitled to judgment as a matter of law on Plaintiff's ERISA § 502(a)(3) claim.

The arguments of Defendant UHC and Defendant MAXIMUS as to the scope of a potential injunction are similarly premature, as the appropriate scope of an injunction depends on which facts Plaintiff successfully proves after a trial on the administrative record. The Court will narrowly tailor any injunctive relief to which Plaintiff is entitled. *See, e.g.*, *Nat. Resources Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007) (explaining that "injunctive relief must be tailored to remedy" harm in particular case).

However, Defendant MAXIMUS also argues that Plaintiff's request for restitution under ERISA § 502(a)(3) fails as a matter of law. The Court agrees. Compensatory damages are unavailable under ERISA § 502(a)(3). *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 259 (1993) (explaining that legal remedies such as compensatory damages are unavailable ERISA § 502(a)(3)). Here, while Plaintiff appears to seek restitution under ERISA § 502(a)(3), the Ninth Circuit has repeatedly drawn a distinction between restitution at law and restitution at equity. *See, e.g.*, *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 662 (9th Cir. 2019) (outlining distinction). Only restitution at equity is available under ERISA § 502(a)(3). *Id.* at 661. Plaintiff does not specify whether Plaintiff seeks restitution at law or restitution at equity. Instead, Plaintiff

37

generically seeks "restitution for reimbursements improperly withheld by Defendants." FAC at 28. Under Ninth Circuit case law, this relief amounts to restitution at law because it would require Defendant UHC and Defendant MAXIMUS "to pay a certain amount of money, and they could satisfy that obligation by dipping into any pot they like." *Depot, Inc.*, 915 F.3d at 662 (internal quotation marks omitted). Accordingly, to the extent Plaintiff seeks restitution under ERISA § 502(a)(3), this form of relief is barred.

In sum, the Court DENIES Plaintiff's motion for partial summary judgment as to Plaintiff's claim for breach of fiduciary duty under ERISA § 502(a)(3). The Court also DENIES Defendant UHC's and Defendant MAXIMUS's motions for summary judgment to the extent that Plaintiff's claim for breach of fiduciary duty under ERISA § 502(a)(3) seeks injunctive relief. The Court GRANTS Defendant UHC's and Defendant MAXIMUS's motions for summary judgment to the extent that Plaintiff's claim for breach of fiduciary duty under ERISA § 502(a)(3) seeks restitution. The Court now turns to Plaintiff's final claim, a claim for denial of a full and fair review under ERISA § 503.

### E. Denial of Full and Fair Review under ERISA § 503

Finally, Defendant UHC and Defendant MAXIMUS both move for summary judgment as to Plaintiff's claim that Defendant UHC and Defendant MAXIMUS deprived Plaintiff of a full and fair review. The Court agrees that summary judgment as to this claim is appropriate.

Under ERISA § 503, all adverse benefit determinations must:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The operative regulations further state that ERISA plans must: (i) provide

38

claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination; (ii) provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits; (iii) provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits; (iv) provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination. 29 C.F.R. § 2560-503.1(h)(2)(i)–(iv).

As an initial matter, Defendant MAXIMUS argues that Defendant MAXIMUS's conduct cannot fall within the scope of ERISA § 503 because Defendant MAXIMUS is not a "named fiduciary." MAXIMUS Mot. at 9. Plaintiff fails to respond to this argument. Thus, the Court finds summary judgment appropriate as to this claim against Defendant MAXIMUS. *See Sandoval v. Los Angeles Cnty.*, No. CV 90-3428 PSG (SSx), 2010 WL 11545547, at *11 (C.D. Cal. April 4, 2010) (noting that failure to address an argument in response to motion for summary judgment waives opposition to it); *see also Wade v. Life Ins. Co. N.A.*, 245 F. Supp. 2d 182, 190 (D. Me. 2003) ("Moreover, the very statute upon which Plaintiff bases her argument only entitles her to a review by 'the appropriate named fiduciary,' 29 U.S.C. § 1133(2), not a full and fair review by outside arbitrators.").

Next, Plaintiff argues that Defendant UHC denied Plaintiff a full and fair review in three different ways. First, Plaintiff claims that Defendant "UHC was obligated to conduct a second level appeal after it denied [Plaintiff's] first level appeal." Plaintiff First Opp'n at 10. However, the Certificate of Coverage does not contain any such guarantee. Instead, the Certificate of Coverage contemplates that the second appeal take the form of an independent medical review in qualifying categories. UHC 228. Defendant UHC informed Plaintiff of the right to undertake an independent medical review throughout the process, and Plaintiff ultimately availed himself of the

39

independent medical review.  *E.g.*, UHC 38.

Second, Plaintiff contends that Defendant "UHC failed to allow [Plaintiff] to address the claim the MyoPro is 'Unproven' as stated in the Omnibus Codes before denying his appeal." Plaintiff First Opp'n at 10.  Such an argument may constitute another theory of breach of fiduciary duty.  *See* 29 U.S.C. § 1104(a)(1)(D) (requiring that fiduciaries act "in accordance with the documents and instruments governing the plan").  However, alleged failure to obey the terms of the Plan does not comprise a separate claim under ERISA § 503.  *See* 29 C.F.R. § 2560-503.1(h)(2)(i)–(iv) (outlining requirements).

Third, and finally, Plaintiff argues that "the initial claim and appeal do not appear to have been conducted by competent individuals."  Plaintiff First Opp'n at 10.  Again, Plaintiff attempts to repackage a theory of breach of fiduciary duty as a denial of full and fair review.  *See* 29 U.S.C. § 1104(a)(1)(B) (requiring that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims").  Plaintiff may seek equitable relief under ERISA § 502(a)(3) pursuant to Plaintiff's breach of fiduciary duty claim that can sufficiently resolve these alleged deficiencies.

Accordingly, the Court GRANTS Defendant UHC's and Defendant MAXIMUS's motions for summary judgment as to Plaintiff's claim for denial of a full and fair review under ERISA § 503.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for partial summary judgment.  The Court also rules on the motions for summary judgment of Defendant UHC and Defendant MAXIMUS as follows:

- The Court DENIES the motions for summary judgment of Defendant UHC and Defendant MAXIMUS as to Plaintiff's claim for improper denial of benefits under ERISA § 502(a)(1)(B);

40

Case No. 18-CV-07454-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT UHC'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT MAXIMUS'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

- The Court GRANTS the motions for summary judgment of Defendant UHC and Defendant MAXIMUS as to Plaintiff's claim for breach of fiduciary duty under ERISA § 502(a)(3) to the extent that it seeks restitution;
- The Court DENIES the motions for summary judgment of Defendant UHC and Defendant MAXIMUS as to Plaintiff's claim for breach of fiduciary duty under ERISA § 502(a)(3) to the extent that it seeks injunctive relief;
- The Court GRANTS the motions for summary judgment of Defendant UHC and Defendant MAXIMUS as to Plaintiff's claim for denial of a full and fair review under ERISA § 503.

Thus, the parties shall proceed to trial on Plaintiff's claim for improper denial of benefits under ERISA § 502(a)(1)(B), and Plaintiff's claim for breach of fiduciary duty under ERISA 502(a)(3) to the extent that it seeks injunctive relief.

**IT IS SO ORDERED.**

Dated: April 8, 2020

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California